JAMESON, District Judge.
This consolidated appeal involves eight bankruptcy cases in which Barry M. Barash, Chapter 7 Trustee for the debtors, sought recovery of alleged preferential transfers. In each case the bankruptcy court found in favor of the defendant creditor. The cases were consolidated on appeal to the district court, which affirmed the decision of the bankruptcy court in all cases.
The sole issue on appeal is whether installment payments voluntarily made by a debtor to an undersecured creditor in the ordinary course of the debtor’s financial affairs within the 90 days preceding bankruptcy, but not more than 45 days after their due date, are preferences which may be avoided by the Trustee under Section 547 of the Bankruptcy Code. This is a case of first impression in this circuit; nor do we find that any other circuit court has passed on the question.
I. Factual Background
In each of the eight cases regular installment payments were made to a creditor *506 within 90 days of an order for relief, 11 U.S.C. § 301. In each case the value of the creditor’s collateral was less than the debt it secured. In all but one case, however, the value of the collateral exceeded the amount of payments made during the 90-day period preceding bankruptcy. All of the payments in question were voluntary, some made through automatic payroll deductions, others by direct payment from the debtor. The bankruptcy court found that none of the payments were made to cure defaults or eliminate arrearages. All of the accounts in question were considered current.[1]
The orders of the bankruptcy court denying recovery to the Trustee were not accompanied by an opinion; but after notices of appeal were filed, the bankruptcy judge filed identical statements in each case:
Appellant’s [trustee’s] statement of the issues he intends to present on the appeal relates only to the grounds for a directed verdict made by appellee [creditor]. The issue on appeal is the Judge’s holding, as disclosed by the transcript, that voluntary payments made by a debtor on a secured debt do not constitute a preference.
The district court affirmed the decisions without an opinion.[2]
In resolving the issue presented on this appeal, it is necessary to determine (1) whether the installment payments were preferences under the Bankruptcy Code; and (2) if so, whether the statutory excep *507 tion removes the transactions from the operation of the preference rules.
II. Elements of a Preference
The Bankruptcy Code prescribes five requirements for a preference, all of which must be met for the Trustee to avoid a transfer.[3] 'A transfer is preferential if it is (1) to a creditor, (2) on account of a pre-existing debt, (3) made while the debtor is insolvent, (4) made on or within 90 days before the date of filing the petition, or made between 90 days and one year before the date of filing the petition if the creditor was an insider who had reasonable cause to believe the debtor was insolvent, and which (5) enables the creditor to receive more than he would receive if the estate were liquidated under Chapter 7. 11 U.S.C. § 547(b).[4]
There is no dispute that the first four elements of a preference are established in each case. The installment payments were all made by a debtor to a creditor, on a pre-existing debt, within 90 days of the bankruptcy filing. The debtors are presumed insolvent during the 90-day period, 11 U.S.C. § 547(f), and no evidence was presented to rebut the presumption. Appellees argue, however, that they have not improved their position vis-a-vis other creditors, as required by § 547(b)(5). The Trustee, on the other hand, contends that the payments received within the 90-day period enabled the creditors to receive a greater proportion of their respective debts than they would if the estate were liquidated under Chapter 7.
As noted above, the debts in all of these cases are undersecured. 11 U.S.C. § 506(a)[5] separates undersecured creditors’ claims into two parts: a secured component and an unsecured component. A creditor has a secured claim only to the extent of the value of his collateral. Any remaining balance is an unsecured claim. The effect of § 506(a) is to classify claims, not creditors, as secured and unsecured. In other words, a single undersecured creditor has both a secured claim and an unsecured claim, each of which is considered in its respective class. See S.Rep.No.95-989, 95th Cong., 2d. Sess. 68, (1978) reprinted in 5 U.S.Code Cong. & Admin.News [U.S.C.C.A.N.], 5787, 5854 (1978).
Except for two cases involving valuation of automobiles, it is agreed that the unsecured components of the debts exceed the amounts of the asserted preferences. The *508 Trustee argues that the payments must be charged against the unsecured claims, and therefore the payments enabled the creditors to receive a greater proportion of their unsecured claims than other unsecured claimants.
Appellees, on the other hand, assert that in all but one case, where the debt is partially secured by a minimal balance in a credit union share account, because the value of the collateral exceeds the payments during the 90-day period, they did not receive more than they would have upon liquidation. The answer to these opposing contentions will depend on which component of the debts, secured or unsecured, the payments should be charged against.
The sparse case law in point supports the Trustee’s position. The court in In Re McCormick, 5 B.R. 726 (Bkrtcy. N.D. Ohio 1980) faced a fact situation very similar to the present cases. The debtor’s loan of $6,500 was secured by an automobile valued at $3,000. The Trustee sued to recover regular car payments made within the 90-day period preceding the bankruptcy filing. BancOhio, the creditor, maintained that the payments were not avoidable because they did not diminish the bankruptcy estate as required by § 547(b)(5). In other words, BancOhio, like the creditors in these cases, argued that because it was a secured creditor it would have received more than the disputed payments upon liquidation.
The court rejected BancOhio’s argument because it ignored the bifurcation of its claim by the operation of § 506(a). The court assumed, “in the absence of proof to the contrary, that the payments were credited toward the unsecured portion of the debt, since this course of action would comport with standard business practice.” 5 B.R. at 729-30. The court concluded that BancOhio therefore must have “received greater payment on its unsecured claim than other unsecured creditors and that the transaction satisfies the requirements of Section 547(b)(5).” Id. at 730.
In re Conn, 9 B.R. 431 (Bkrtcy. N.D. Ohio 1981) similarly dealt with the fifth element of a preference. There a $4,000 debt was secured by an automobile whose value was listed as $3,500. The debtor disputed this valuation, however, arguing that it was much higher. The bankruptcy court found that the trustee had not carried his burden of proving the claim was greater than the value of the collateral. In the absence of proof to support the listed value, the court assumed the collateral was equal to the amount of the claim, so the debt was not bifurcated pursuant to § 506(a). 9 B.R. at 434.
This determination was crucial to the court’s ultimate conclusion that the installment payments were not voidable preferences. Id. Because the debt was deemed fully secured, the payments did not enable the creditor to obtain a greater percentage of its debt than it would under the distributive provisions of the Code. The court’s analysis implies, however, that had the value of the collateral been shown to be less than the claim, a preference would have been found to exist.
We find the reasoning in McCormick and Conn persuasive. A principal goal of the preference provisions is the assurance of equal distribution among creditors. H.R. Rep. 95-595 95th Cong., 1st Sess. 178 (1977), reprinted in 5 U.S.Code Cong. & Admin. News 6138-39 (1978); 4 Collier on Bankruptcy [Collier] H547.03[l] (15th ed. 1980). Section 547(b)(5) is aimed at achieving that goal. The “greater distribution requirement” of § 547(b)(5) is discussed in 4 Collier 1547.35. The discussion emphasizes the comparison between what a creditor actually received in an alleged preference and what other creditors of the same class would have received upon liquidation had the questioned transfer not been made. This explanation alone, however, does not adequately clarify the statutory scheme.
For example, if upon liquidation unsecured creditors would be paid 20% of their claims (based on remaining assets and scheduled claims after secured creditors are paid), to defeat a trustee’s avoidance rights a creditor would have to show only that the payments received during the 90-day period do not exceed 20% of the creditor’s unse *509 cured claim. This sole comparison, however, does not account for what happens thereafter. If the payments made were less than 20%, there would be no preference and the creditor would keep the payments and later also receive a pro-rata share of the balance of his claim. In the final analysis, this would violate the fundamental principle of equal distribution among a class of claims.
Section 547(b)(5) is directed at transfers which enable creditors to receive more than they would have received had the estate been liquidated and the disputed transfer not been made. As long as the transfers diminish the bankrupt’s estate available for distribution, creditors who are allowed to keep transfers would be enabled to receive more than their share. The creditors in the instant case must account for the payments they received during the 90 days preceding the bankruptcy filing, or they will ultimately receive a larger share of their unsecured claims than other unsecured creditors. Of course, they will still receive the full benefit of their collateral as to their secured claims.
III. Normal Course of Business Exceptions: § 547(c)(2)
Because all five elements of § 547(b) have been satisfied in each of the cases here on appeal, we must determine whether the exception urged by appellees and amicus defeats the Trustee’s attempt to avoid the transfers. 11 U.S.C. § 547(c) sets out specific exceptions to the preference rules discussed above, including the following:
(c) The Trustee may not avoid under this section a transfer—
(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(D) made according to ordinary business terms;
Again, without dispute, all but one of the criteria are met — the payments were made in the ordinary course of financial affairs of the debtors and the normal course of business of the creditors,2 ***[6] on debts incurred in the normal course, and according to normal business terms. The only question concerns the second requirement — whether the payments were made within 45 days after the debts were “incurred”.
Appellees and amicus argue that for consumer installment transactions, a new debt should be deemed incurred as each monthly payment falls due. In support of this position the creditors cite Henson, The Uniform Commercial Code and the New Bankruptcy Act: Some Problem Areas, 35 The Business Lawyer 83, 96 (1979). The author expressed the “hope” that in the absence of acceleration of the unpaid balance, “as to each installment the ‘debt was incurred’ as each installment came due.... ” He acknowledged, however, that “the language of the Act does not facilitate this answer.” Id.
We agree with the reasoning in 4 Collier H 547.38 that “[t]he probably better view is that the debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt.” Using the example of a monthly utility bill, Collier continues:
Certainly when a debtor uses a utility the debt is incurred at the time the resource is consumed rather than when the invoice is sent. Thus ..., unless the utility bill is sent and paid within a short time, there is a significant probability that payment of the utility bill will be made more than 45 days after the debt is incurred.

Id.

Appellees and amicus make a strong policy argument, supported by specific lan *510 guage in the legislative history of the 1978 Bankruptcy Reform Act, that because the alleged preferences here were normal payments they should be protected against the Trustee’s avoidance power. The primary purpose of the § 547(c)(2) exception
is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor’s slide into bankruptcy.
H.R.Rep.No.95-595, 95th Cong., 1st Sess. 373-74 (1977), reprinted in 5 U.S.Code Cong. & Admin.News 6329 (1978); S.Rep.No. 95-989, 95th Cong., 2d Sess. 88 (1978), reprinted in 5 U.S.Code Cong. & Admin. News 5874 (1978). The payments in question here did not result from unusual action by either the debtors or creditors. Rather, they were made in the ordinary course as they came due. Appellees argue that under these circumstances they had no way of knowing that the debtors were having financial difficulties.
The short answer to this argument is that the creditor’s knowledge or state of mind is no longer relevant. Under the predecessor to § 547 (§ 60 of the Bankruptcy Act of 1898), the Trustee had to establish that the creditor had “reasonable cause to believe” that a debtor was insolvent before a transfer could be avoided. Congress eliminated this requirement in favor of the objective criteria under the new Code. As noted in Collier,
intent or motive is not a material factor in the consideration of an alleged preference under § 547. Generally speaking, it is the effect of a transaction, rather than the debtor’s or creditor’s intent, that is controlling.
4 Collier 1547.01 at 547.12. (emphasis in original.)
The legislative history of § 547 supports this view. The “reasonable cause to believe” requirement served the primary purpose of the former statute of preventing the “race of diligence.” But “a creditor’s state of mind has nothing whatsoever to do with the policy of equality of distribution .... ” H.R.Rep.No.95-595, supra, at 178, 5 U.S.Code Cong. & Admin.News at 6139. Appellee’s position ignores this important and fundamental goal of the preference section under the Code. In revising the Code, Congress also sought to simplify the complex preference provisions and their interpretations under former law. Id. at 179, 5 U.S.Code Cong. & Admin.News at 6140. It is in this context that we must interpret the language of § 547(c)(2). Construing “incurred” to mean when a debtor first becomes legally bound to pay comports not only with the plain meaning of the' word but also with the fundamental policy of equality of distribution.
We do not denigrate the importance of deterring the “race to the courthouse.” But this purpose behind § 547 does not conflict with the fundamental goal of equality of distribution. Rather, the drafters of the Code envisioned the deterrence of the “race of diligence” as furthering the more important goal of equal sharing of assets among creditors. Id. at 177-78, 5 U.S.Code Cong. & Admin.News at 6138. The § 547(c)(2) exception protects only those normal transactions which open and close within 45 days, regardless of the knowledge of the creditors or the current status of installment debts.
We cannot agree with appellees that the Trustee is advancing a novel theory of preferential transfers in these cases. Preferences existed in these circumstances under prior law, but trustees rarely sought recovery because of the difficulty of proving insolvency at the time of transfer or the creditors’ “reasonable cause to believe” that the debtors were insolvent. In fact, this was the impetus behind the 1978 amendments which eliminated the reasonable-cause-to-believe element and established the presumption of insolvency. See H.R. Rep.No.95-595, supra at 178-79, 5 U.S. Code Cong. & Admin.News at 6139-40. Nothing in § 547(c)(2) or its history suggests otherwise.
There was no express exception for normal business or financial affairs transactions under the old Bankruptcy Act, but courts often allowed an exception for regular business expenses based on the notion that current expenses were not antecedent debts. See In re Peninsula Roofing and *511 Sheet Metal, Inc., 9 B.R. 257, 261-62 (Bkrtcy.W.D.Mich.1981), citing Kaye, Preferences under the New Bankruptcy Code, 54 Am.Bankr.L.J. 197, 209 (1980). The underlying rationale of § 547(c)(2) appears to be the same as the “current expense” rule under former law: “no diminution of the estate, payment not for antecedent debt, and allowing the debtor to stay in business.” Id. at 262. The new Code, however, sets out objective criteria, particularly the 45-day time limit, for applying the exception.
In short, the § 547(c)(2) exception is aimed at transactions which, although they are technically credit transactions, are not intended to remain unpaid for a long time. In this sense, the “normal payments” exception is a variant of the “contemporaneous exchange” exception of § 547(e)(1).[7] The courts in In re McCormick, 5 B.R. 726 (Bkrtcy. N.D. Ohio) and In re Bowen, 3 B.R. 617, 619 (Bkrtcy.E.D.Tenn.1980) considered consumer credit transactions comparable to the cases at bar and reached the same conclusion. Both courts based their analysis on Levin, An Introduction to the Trustee’s Avoiding Powers, 53 Am.Bankr.L.J. 173 (1979). Levin was a member of the House Judiciary Committee staff which drafted the new Code. He explains in his article that § 547(c)(2) insulates ordinary trade credit transactions that are kept current. The 45-day limit was chosen because it reflected a normal trade cycle, and Levin agrees with Collier and our conclusion above that a debt is incurred when it becomes a legally binding obligation of the debtor. Id. at 186. Although the “normal payments” exception in § 547(c)(2) protects consumer transactions as well as trade credit, the installment debts involved here do not fall within the statutory design. The cases in this appeal all involve long-term credit, in contrast to situations where full payment is expected shortly after the obligation was incurred, and in fact payment is made within 45 days. If all regular consumer installment payments are to escape the Trustee’s avoidance powers, Congress, rather than the courts, should provide the relief.[8]
IV. Valuation of Collateral
The payments here in dispute are preferential to the extent they are credited to the unsecured components of the debts. Payments on secured claims do not diminish the estate, i. e., they do not enable a creditor to receive more than he would under the liquidation provisions of the Code. Section 506(a) provides that a debt is secured only to the extent of the value of the collateral. Any remaining amount is an unsecured claim. Valuation of collateral is thus crucial to determining the amount of the preferences. See In re Conn., supra, 9 B.R. 435.
In all but two of the cases it is undisputed that the unsecured component of the debt exceeds the payments made during the preference period. In Trustee for Millington v. First Galesburg National Bank and Trust Co. and Trustee for Harding v. Gates Credit Union, however, all of the payments during the 90 days preceding the bankruptcy filings may not be preferential, depending on what values are used for the automobiles securing the debts. In the Millington case, the bank contends that the NADA retail value of the car, $5,950, is proper. The net payoff is $6,005, so the amount of the preference would be only $55 and the bank would not have to account to the Trustee for the remaining $498 received during the preference period. The Trustee argues that the wholesale value, $4,925, should be used. In that case, the entire $553 received by the bank during the 90-days would be recovered by the Trustee. A *512 similar problem exists in the Harding case. If retail value is used, only $128 of the total $984 paid would be preferential, but if wholesale value applies, $928 would be avoidable by the Trustee.
The legislative history of § 506(a) indicated that no fixed formula exists for establishing the value of collateral. Congress did not necessarily contemplate the use of forced sale or liquidation value; nor is fair market value always appropriate. “Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.” H.R.Rep.No.95-595, supra, at 356, 5 U.S.Code Cong. & Admin.News at 6312. Value should be determined by the purpose of the valuation and the proposed disposition or use of the property. S.Rep.No. 95-989, supra, at 68, 5 U.S.Code Cong. & Admin.News at 5854.
The present record does not enable us to determine the appropriate value of the cars in these cases. On remand the bankruptcy court should determine the value of the automobiles in light of the competing interests of the parties and the proposed use or disposition of the cars by the secured creditors. The choice of values is not restricted to NADA wholesale or retail, but depends on the facts and circumstances of each case.
V. Conclusion
We hold that regular installment payments on consumer debts, made within 90 days preceding the filing of a bankruptcy petition, may be avoided as preferential transfers to the extent the payments are credited to unsecured claims. The bankruptcy court must determine the value of collateral on a case-by-case basis to ascertain the extent of the preferences, in keeping with the bifurcation of debts into secured and unsecured claims under 11 U.S.C. § 506(a). The exception for normal transactions in 11 U.S.C. § 547(c)(2) extends only to situations where payment is made within 45 days after the debtor first becomes legally bound to pay.
Reversed and remanded.

. The following chart summarizes the transactions:

Trustee for Dennis v. Public Finance

Description of security: household goods and furniture, 1974 Ford pickup truck and 1974 Suzuki motorcycle.
Date of loan: March 28, 1979.
Date of bankruptcy: April 10, 1980.
Amount paid in last 90 days: $166.
Value of Collateral: The parties stipulated that Public was undersecured.
Balance due creditor at bankruptcy: $4,652.43.

Trustee for Millington v. First Galesburg National Bank & Trust Company

Description of security: 1979 Pontiac Fire-bird.
Date of loan: March 23, 1979.
Date of bankruptcy: March 31, 1980.
Amount paid in last 90 days: $553.06.
Value of collateral: retail — $5,950; wholesale —$4,925.
Balance due creditor at bankruptcy: gross— $7,122.18, net payoff balance — $6,005.08.

Trustee for Millington v. Associates Finance, Inc.

Description of security: household goods and furniture.
Date of loan: August or September, 1979.
Date of bankruptcy: March 31, 1980.
Amount paid in last 90 days: $342.
Value of collateral: $1,200.
Balance due creditor at bankruptcy: $3,306.

Trustee for Millington v. Midwest Employees Credit Union

Description of security: $25.34 on deposit at credit union.
Date of loan: December 16, 1978.
Date of bankruptcy: March 31, 1980.
Amount paid in last 90 days: $103.04.
Value of collateral: $25.34.
Balance due creditor at bankruptcy: $847.27.

Trustee for Nelson v. Farmers and Mechanics Bank

Description of security: 1976 Ford pickup truck and 1979 Dodge Colt.
Date of loan: 1979 (2 loans).
Date of bankruptcy: April 2, 1980.
Amount paid in last 90 days: $381.84.
Value of collateral: $6,400.
Balance due creditor at bankruptcy: $9,200.

Trustee for Nelson v. Household Finance Corporation

Description of security: household goods and furniture.
Date of loan: May 23, 1979.
Date of bankruptcy: April 2, 1980.
Amount paid in last 90 days: $75.
Value of collateral: $2,000.
Balance due creditor at bankruptcy: $2,467.93.
Trustee for Carter v. heath & Company
Description of security: furniture.
Date of loan: 1978-1979.
Date of bankruptcy: April 2, 1980.
Amount paid in last 90 days: $75.
Value of collateral: $300.
Balance due creditor at bankruptcy: $479.

Trustee for Harding v. Gates Credit Union

Description of security: 1978 Dodge.
Date of loan: June 15, 1978.
Date of bankruptcy: April 8, 1980.
Amount paid in last 90 days: $984.90.
Value of collateral: retail — $5,225; wholesale —$4,425 (stipulated).
Balance due creditor at bankruptcy: $5,353.07.

. The Illinois Credit Union League has filed an amicus curiae brief urging affirmance of the decision of the district court.

. Collier on Bankruptcy breaks a preference down into six elements, adding as the first element that the transfer be property of the debtor. 4 Collier on Bankruptcy j| 547.08 (15th ed. 1980).

. The complete text of 11 U.S.C. § 547(b) reads as follows:
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

. § 506 reads:
Determination of secured status
(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor’s interest in the estate’s interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor’s interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor’s interest.

. The phrase “normal course of financial affairs” was included in the statute to ensure that consumer transactions would be covered by the preference provisions. See Senate Rep.No.95-989, supra, 5 U.S.Code Cong. & Admin.News at 5874 (1978); 4 Collier fl 547.38.

. § 547(c)(1) provides:
(c) The trustee may not avoid under this section a transfer—
(1) to the extent that such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange;

. All parties agree that the problem belongs to Congress rather than the courts, but disagree with respect to the legislative intent and how the exception of § 547(c)(2) should be interpreted “in the interim.”