**In the Matter of LACKOW BROTHERS, INC., Debtor.**

**William ROEMELMEYER and Jeanette Tavormina, as Co-Trustees, Plaintiffs,**

v.

**WALTER E. HELLER & COMPANY SOUTHEAST, INC., Defendant.**

Bankruptcy No. 81–00485–BKC–SMW.
Adv. No. 82–0135–BVKC–SMW–A.

United States Bankruptcy Court,
S. D. Florida.

April 27, 1982.

Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for defendants.

Irving Wolff, Miami, Fla., for plaintiffs.

Louis Phillips, Miami, Fla., for creditors committee.

William Roemelmeyer, Miami Shores, Fla., and Jeanette Favormina, Miami, Fla., Co-Trustees.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be tried upon an Adversary Proceeding filed by Plaintiffs, Co-Trustees of the herein estate of the Debtor (the "Co-Trustees"), Lackow Brothers, Inc. ("Lackow") against Walter E. Heller & Company Southeast, Inc. ("Heller"), seeking to avoid a transfer of property of the Debtor as a preference pursuant to 11 U.S.C. § 547(b) and to recover property of the estate.

Heller raised the defense of res judicata and estoppel by judgment, contending that the Co-Trustees were required to assert their preference claim as a compulsory

counterclaim in a prior adversary proceeding brought by Heller (Adv. 81–0386). Rule 713(3), Rules of Bankruptcy Procedure, provides wide latitude to a trustee in bringing claims for the estate, whether by counterclaim or by separate action. The Court finds that the Co-Trustees are not barred by any prior proceedings from bringing this claim.

The Court, having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the pleadings and argument of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

Prior to the time it ceased doing business, the Debtor was a manufacturer of moderately-priced jewelry, its inventory consisted mainly of gold jewelry items. Heller has a lien on the Debtor's inventory and accounts receivable by the terms of an Inventory Loan Security Agreement dated September 24, 1980 and an Accounts Financing Security Agreement of even date, whereby Heller would advance monies to the Debtor, and, in return would collect the Debtor's accounts receivable. At the time Lackow filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on April 1, 1981, Heller was owed approximately 1.6 million dollars. The Co-Trustees do not challenge either the amount due Heller or the perfection of Heller's lien.

The Co-Trustees argue that in accordance with the Findings of Fact and Conclusions of Law of this Court resulting from a prior adversary proceeding between Heller and the Co-Trustees, in which Heller sought relief from stay and, in the alternative, adequate protection, (Adv. 81–0386–BKC–SMW–A), the total value of the collateral securing Heller's debt has been determined by this Court to be $922,000, or less than the total amount of indebtedness at the time of bankruptcy, and that consequently, a part of Heller's claim is unsecured. The Co-Trustees contend further, that to the extent Heller received payments from the Debtor within the ninety (90) days prior to

bankruptcy in excess of its advances, those payments must be applied to the unsecured component of Heller's claim; that such payments enabled Heller to receive more on its unsecured claim than other unsecured creditors in a Chapter 7 liquidation and therefore, constitute a voidable preference within the meaning of 11 U.S.C. § 547(b). The Co-Trustees rely on the case of *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir. 1981) to support their argument that a creditor has a secured claim only the extent of the value of his collateral, and that 11 U.S.C. § 506(a) requires bifurcation of an undersecured creditor's claim. Such an undersecured creditor, who receives payments during the ninety (90) days preceding the bankruptcy filing, must account for any payments which allowed him to receive a larger share of the unsecured component of his claim than other unsecured creditors. Applying the *Barash* case to the Heller claim, the Co-Trustees maintain that Heller improved its position as to the unsecured part of its claim in the total amount of approximately $365,000, and that the entire amount should be returned to the estate.

At trial, the Co-Trustees offered in evidence the deposition of James Spector, Executive Vice President of Heller. The Co-Trustees offered additional testimony by Mr. Spector at trial, showing by computer printouts from Heller's records the loan balances on accounts receivable and inventory, advances made by Heller to Lackow, and payments received by Heller on the first and last days of each month during the ninety (90) day period prior to the filing of the Bankruptcy Petition in furtherance of the Co-Trustee's preference claim.

The Court finds, however, that although the bifurcation of claims principal as it is applied in the *Barash* case, is sound law in establishing a voidable preference in the case of a creditor who is undersecured on the date of the filing of the Bankruptcy Petition, that doctrine is misapplied to the present case. The evidence clearly supports a finding that Heller is not an undersecured creditor, and that, in fact, it was collateralized to the full extent of its outstanding

loan to the Debtor, both on the 90th day prior to the bankruptcy filing and on the day of the filing of the Voluntary Petition as well.

On cross-examination, the testimony of Heller's principal showed that on January 1, 1981, the 90th day prior to the filing of the Debtor's Petition, Lackow's total obligation to Heller was $1,994,511.00. On that same date, the total value of the collateral which was pledged to Heller was $4,735,395.00, a value exceeding the amount of indebtedness by $2,740,884.00. Heller's records reflected further that on March 31, 1981, on the eve of the filing of the Petition in Bankruptcy, the total obligation of Lackow to Heller was $1,627,078.00. The total value of collateral pledged to Heller under the various loan documents and security agreements on that same date was $3,903,819.00, (the value of its collateral still exceeding the amount of the obligation by $2,276,741.00.) Thus, both on the 90th day prior to the Debtor's filing of its petition and on the day of the filing of the petition, Heller was a fully secured creditor of the Debtor.

The Co-Trustees did not challenge the accuracy of those figures. Moreover, the values were derived from the Debtor's own routine accounting reports to Heller in the regular course of business. As Heller was clearly secured for the total amount of its indebtedness on the two pivotal dates, January 1, 1981 and April 1, 1981, the payments made to Heller within the ninety (90) days preceding the filing of the Bankruptcy Petition could only be applied to Heller's secured claim, and not to any existing unsecured component of that claim to the prejudice of other unsecured creditors. The Court concludes that the payments made to Heller by the Debtor, within the ninety (90) day period prior to Bankruptcy, are not preferences voidable by the Co-Trustees within the meaning of 11 U.S.C. § 547(b).

■ The Co-Trustees incorrectly premise their claim of preference on the theory that the total value of Heller's collateral which is applicable to the present Adversary Proceeding, is the same total value which had been established in the prior adversary brought by Heller for adequate protection. That valuation of the Debtor's collateral, a total of $922,000, was determined after the Debtor had ceased operating its business, the Chapter 11 proceedings had been converted to a liquidation proceeding under Chapter 7, and the Co-Trustees had already been appointed by the Court to administer the estate. A liquidation value placed on the Debtor's inventory and accounts receivable at that stage of the bankruptcy proceeding, in the context of a suit for adequate protection by a secured creditor, cannot now validly serve as the definitive value of collateral pledged to Heller at a time prior to Bankruptcy, when the Debtor as still operating its business. Valuation is a variable concept under the Code, having different meanings for different purposes; Valuation of collateral must be determined on a case by case basis. *Barash v. Public Finance Corp., supra.* In this instance, where voidable transfer to a secured creditor is at risk, the Court concludes that the "ongoing concern" value of the inventory and accounts receivable pledged to Heller, as reflected in the routine accounting reports to Heller by the Debtor on the eve of bankruptcy, is the proper valuation standard to apply.

■ This case is more appropriately governed by 11 U.S.C. § 547(c)(5), the provision in the Code which expressly excepts from the preference section liens on inventory or receivables, except to the extent that a creditor has improved his position at the expense of the estate during the ninety (90) days before the petition. The inventory/receivable exception represents a significant departure from former law as it was construed under the Bankruptcy Act, overruling such cases as *DuBay v. Williams*, 417 F.2d 1277 (9th Cir. 1969), and *Grain Merchants of Indiana, Inc. v. Union Bank and Savings Co.*, 408 F.2d 209 (7th Cir.); *cert. denied*, 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969). Those cases insulated a floating lien on inventory or receivables from preference attack by holding that the transfer of after-acquired collateral to the secured party was deemed to have occurred at the

time the financing statement was filed. Section 547(c)(5) codifies an "improvement in position" test, while providing that a transfer is not made until the debtor has actually acquired rights in the property transferred. The new provision does subject transfers of after-acquired property under a floating lien to preference attack; however, in the case of inventory or receivables, a preference will be found only to the extent that there has been an improvement in position at the expense of the estate during the ninety (90) days before the petition. 4 Collier on Bankruptcy [Collier] § 547.41 (15th ed. 1980).

The "improvement in position" test is generally based on two dates; the first date being the ninetieth (90th) day before the filing of the petition, and the second, the date of the petition itself (the dates may vary in cases where perfection of the security interest occurs within the ninety (90) day period or in cases involving an insider). If the secured creditor is found to have improved his position during the relevant ninety (90) day period, at the expense of other unsecured creditors, he is then subject to the preference attack. Thus, the two-point test preserves the primary goal of the preference provisions of the Code, which is the assurance of equal distribution among creditors of the same class; [1] and at the same time allows for the fluctuating nature of the collateral during the relevant ninety (90) day period.[2]

The Court finds and concludes that under the two-point "improvement in position" test required by Section 547(c)(5), Heller was secured to the full extent of the outstanding balance of its loan to the Debtor on both of the pivotal dates within the ninety (90) days before the petition; the Court further finds and concludes that Heller, being at no relevant time undersecured, did not receive any payments from the Debtor during the relevant ninety (90) day period which could have improved Heller's position to the prejudice of the estate; that Heller's claim falls squarely within the exception from preference provision of 11 U.S.C. § 547(c)(5); and that therefore, the Court must deny the relief prayed for by the Co-Trustees.

---

1. H.R.Rep. 95–595, 95th Cong., 1st Sess. 178 (1977), reprinted in 5 U.S.Code Cong. & Admin. News 5787, 6138–39 (1978); 4 Collier on Bankruptcy [Collier] § 547.03[1] (15th ed. 1980).

2. *See* Countryman, "Bankruptcy Preferences—Current Law and Proposed changes", 11 U.C.C. L.J. 95, 103 (1978); *See also* Orr & Klee, "Secured Creditors under the Bankruptcy Code, 11 U.C.C.L.J. 312, 332–35 (1979).