In re ENERGY COOPERATIVE, INC., Debtor.

ENERGY COOPERATIVE, INC., Plaintiff,

v.

U.S.A. ROOKWOOD, Defendant.

No. 81 B 5811.
Dist. No. 85 C 3550.
Adv. No. 82 A 3721.

United States District Court, N.D. Illinois, E.D.

Feb. 23, 1989.

---

## MEMORANDUM OPINION

KOCORAS, District Judge:

Before the court is defendant, U.S.A. Rookwood Corporation's ("Rookwood") motion for summary judgment. For the following reasons, Rookwood's motion is granted.

### FACTS

This action is brought by the Trustee in bankruptcy ("Trustee") for the estate of Energy Cooperative, Inc. ("ECI") pursuant to 11 U.S.C. § 547 to set aside alleged preferential transfers ECI made to Rookwood during the ninety days preceding ECI's filing of bankruptcy on May 15, 1981. These transfers occurred under two exchange agreements between the parties.

On September 10, 1980, ECI and Rookwood entered into the first agreement, an "evergreen" exchange agreement ("Exchange Agreement," also referred to by the parties as Contract 691). The exchange agreement was unlimited in duration and provided that Rookwood would deliver to various terminals operated by ECI specified amounts of petroleum product and that ECI would then be obligated to return product to Rookwood. This agreement was of a type customarily entered into by Rookwood.

The second agreement, Contract 12040, was entered into by the parties on April 2, 1981. This agreement provided for a single transaction pursuant to which ECI "book transferred" product to Rookwood. Rookwood delivered an equivalent amount of the same product to ECI that same day.

Rookwood alleges that it is entitled to summary judgment because ECI incurred debts and made transfers to Rookwood in the ordinary course of business, according to ordinary business terms, and within forty-five days of the date ECI incurred debts to Rookwood. The transfers, Rookwood argues, are thus excepted from the Trustee's power of avoidance.

ECI concedes that the transfer under Contract 12040 and certain transfers pursuant to the Exchange Agreement are not recoverable by the Trustee. However, the Trustee asserts that approximately $400,731 of product exchanged under the exchange agreement during the 90 days prior to bankruptcy constitutes a preference under the Bankruptcy Code. It is these transfers that are at issue in the present motion and will be discussed in greater detail.

### DISCUSSION

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one which might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issue exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* 106 S.Ct. at 2511. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative. *Id.*

When a properly supported motion for summary judgment has been made, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* The opposing party is entitled to the benefit of all favorable inferences which can reasonably be drawn from the underlying facts; however, only *reasonable* inferences will be drawn, not every conceivable inference. *DeValk Lincoln*

*Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987).

Applying these standards, the court must determine whether a genuine issue of material fact exists which precludes a finding that the transfers in question satisfy the requirements for § 547(c)(2) exception. Under Section 547(c)(2) of the bankruptcy code, the Trustee is prevented from avoiding an otherwise "preferential transfer" to the extent that such transfer was:

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (Pre–1984 amendments). Rookwood alleges that all 4 elements of this exception have been satisfied for all transfers under the exchange agreement, and therefore, Rookwood is entitled to summary judgment as a matter of law. The court agrees.

Without dispute, all but one of the criteria are met. At issue is whether ECI's obligation (debt) to Rookwood in certain specific transactions was "incurred" within a time period sufficient to satisfy the "45 day rule" of § 547(c)(2)(B).

Both parties cite with approval the analysis set forth in *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981). The Seventh Circuit, quoting 4 *Collier on Bankruptcy*, ¶ 547.38 (15th ed.1980) discussed when a debt is "incurred":

"(t)he probably better view is that the debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt."

658 F.2d at 509. The court went on to note that the primary purpose of the § 547(c)(2) exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual payments or transfers by either the debtor or his creditors, which unfairly benefit some creditors at the expense of others on the eve of bankruptcy. *Id.* at 510 (cites omitted). The transactions in question in this case were part of the parties' ongoing business relationship and made in the ordinary course of business.

ECI and Rookwood frequently used book transfers of product rather than physical transfer. Such transfers were in the ordinary course of business. Further, it seems clear that ECI incurred a debt to Rookwood on the date Rookwood delivered product to ECI, whether by physical transfer or book transfer. *Barash, supra.*

The Exchange Agreement between the parties contains a provision which provides that, "(t)he volume delivered by each partner to the other shall be kept reasonably in balance at all times ..." (Aff. Nunn, paras. 4, 7). In *Fina,* this court found that it is the transfer of products by one exchange partner to the other which triggers the obligation (i.e. when the debt is incurred) to return an equal amount of product to the other partner. Thus, no antecedent debt existed until one partner owed product to the other on account of a prior delivery by the other. Mem. Opinion, December 12, 1986, p. 6. This analysis is properly applied to book as well as physicial transfers.

For the specific transfers in question, Rookwood asserts that ECI incurred a debt to Rookwood on January 28, 1981 in the amount of 543,984 gallons of product. Rookwood further alleges that ECI completely extinguished this debt by February 19, 1981 by making deliveries and book transfers of product to Rookwood. Only 22 days separates these dates. From February 19 to February 27, 1981, the exchange favored ECI.

On February 27, 1981, the exchange balance swung in favor of Rookwood when ECI incurred a debt to Rookwood in the amount of 921,132 gallons of product. ECI completely extinguished this debt by March 24, 1981 by making physical deliveries of product to Rookwood. At most, a period of 25 days elapsed between the time ECI incurred a debt to Rookwood and ECI's

transfers to Rookwood in satisfaction of the indebtedness. (Rookwood's motion at p. 4–5).

The Trustee argues, however, that the date Rookwood uses for one of its 45 day rule arguments is not properly considered the date the debt was "incurred." Specifically, the Trustee states that February 27, 1981, is the date on which ECI recorded receipt of 1,050,00 gallons of product from Rookwood, and that in making the book transfer, ECI "transformed its obligation to deliver product to Mt. Airy under (a separate exchange) contract to an obligation to deliver product to Rookwood under contract 691." (Trustee's Rule 12(m) statement, ¶ III, 1; See also Aff. of Kitzes, p. 4). The Trustee concludes that the obligation from ECI to Mt. Airy arose by transfers of product from Mt. Airy to ECI on January 28 and January 30, 1981. Based on the January dates, the Trustee asserts that seven transfers of product from ECI to Rookwood under Contract 691 fall outside the 45 day rule, or approximately $400,731 of product exchanged is not subject to the 45 day rule.

The record evidence in this case does not support the Trustee's contention that the book transfer of 1,050,000 gallons of product was merely an assignment of ECI's obligation from one creditor to another. The evidence clearly establishes that this book transfer, as well as others, did involve transfer of title of actual physical product to ECI which had been purchased by Rookwood. Orion Nunn's deposition testimony on this subject is clear and uncontradicted. The documentary exhibits in the case support Rookwood and Nunn's version of the transaction described and the deposition testimony of James Nelson is, in its material respects, not contrary.

The affidavit of Joseph Kitzes, an accountant employed by the Trustee to perform a financial analysis of the transfers of product between ECI and its exchange partners during the 90 days prior to ECI's bankruptcy filing in May 15, 1981, is insufficient to create an issue of fact. Mr. Kitzes has no first-hand knowledge of any of the events or considerations underlying the documents he analyzed and the methodology he employed is based on a hypothesis. Short of actual knowledge or specific assertions of factual events, Mr. Kitzes is in no position to legitimately dispute the other evidence—direct, probative and first-hand—developed during discovery.

CONCLUSION

The court concludes that all transfers to Rookwood made in the ninety days prior to bankruptcy were made 45 days from the date the debt was incurred by ECI. Under § 547(c)(2) of the Bankruptcy Code, they are thus excepted from the Trustee's power of avoidance. For the reasons stated, U.S.A. Rookwood's motion for summary judgment in its favor is granted.

It is so ordered.