In re CXM, Inc., Debtor.

Lawrence Fisher, as Trustee,

v.

Enterprise Truck Line, Inc., Industrial Metal Enterprise, Inc., Safran Metals, Inc.

Bankruptcy No. 03 B 28236.
Adversary Nos. 05 A 1370,
05 A 1373, 05 A 1380.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 17, 2006.

Keevan D. Morgan, Timothy Culbertson, Konstantine T. Spargis, Morgan & Bley, Ltd, Chicago, IL, for Plaintiff, Lawrence Fisher.

Whitman H. Brisky, Mauk & Baker, Chicago, IL, for Industrial Metal Enterprises, Inc.

Edward Margolis, Teller Levit Silvertrust, Chicago, IL, for Safran Metals, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON BIFURCATED COMMON ISSUES

JACK B. SCHMETTERER,
Bankruptcy Judge.

This matter comes before the Court at the trial of certain issues common to the three captioned Adversary proceedings and on the Amended Adversary Complaints in those proceedings of Trustee Lawrence Fisher, as the Trustee for the Chapter 7 estate of CXM, Inc. against Enterprise Truck Line, Inc., Industrial Metal Enterprise, Inc., and Safran Metals, Inc., (collectively referred to as the "Defendants"). The Trustee's complaints seek to avoid pre-petition transfers to the Defendants pursuant to 11 U.S.C. § 547(b), and to recover those transfers for the benefit of the estate pursuant to 11 U.S.C. § 550. Pursuant to pretrial conference held under Rule 16(c)(12) and (13) Fed. R.Civ.P. [Rule 7016 Fed.R.Bankr.P.] and Pretrial Order entered under Rule 16(e) Fed.R.Civ.P. [Rule 7016 Fed.R.Bankr.P.], a limited bifurcation of the subject Adversary proceedings was ordered for trial on the common factual issues of (1) whether the Debtor was insolvent at times of the transfers in issue; and (2) whether each transfer exceeded what each of the Defendants would have received in a Chapter 7 bankruptcy. For reasons set forth below, the Court finds and concludes in favor of the Plaintiff on both of these issues.

### FINDINGS OF FACT

1. The underlying bankruptcy proceeding (the "Bankruptcy Case") commenced on or about July 3, 2003, when certain the Debtor filed a voluntarily Petition for Relief under Chapter 11 of the United States Bankruptcy Code. On January 22, 2004, the Court entered an order converting the case from Chapter 11 to Chapter 7 retroactive to December 9, 2003, and Lawrence Fisher was appointed interim Trustee in the case and now serves as permanent Trustee. Currently, the Bankruptcy Case is pending before this Court, and therefore, pursuant to Title 28, § 1409(a), this Court is the proper venue for this adver-

sary complaint. [Plaintiff's Amended Complaint ("PAC") at ¶ 3].

2. This action is a civil proceeding arising under Title 11, United States Code (the "Bankruptcy Code"), or arising in or related to a case under the Bankruptcy Code within the meaning of Title 28, United States Code ("Title 28"), § 1334(b). [PAC, ¶ 1, Safran Metals Answer ("SMA") at ¶ 1].

3. This is a core proceeding pursuant to Title 28, §§ 157(b)(2)(A), (E), (H), and (O), because it involves matters concerning the administration of the estate, a potential order to turn over property of the estate, a determination, avoidance, and recovery of preferential payments, and because it is a proceeding affecting the liquidation of the assets of the estate. This matter has generally been referred to the Bankruptcy Unit of the United States District Court for the Northern District of Illinois, Eastern Division (the "Court") pursuant to 28 U.S.C. § 157(a). [PAC, ¶ 2, SMA, ¶ 2].

4. On September 24, 2003, the Court entered an Order approving a sale of all of the Debtor's assets pursuant to Section 363 of the Bankruptcy Code, free and clear of all liens, claims and encumbrances ("the Sale Order") to CXM Acquisition, LLC for the sum of $7,040,000. [Plaintiff's Exhibit 2].

5. On April 1, 2004, the Court entered Findings of Fact and Conclusions of Law regarding the Amended Motion of Baricide, Inc. ("Baricide") for Allowance and Payment of a breakup fee related to the sale of the Debtor's assets. [Plaintiff's Exhibit 7]. The business assets of the Debtor had been marketed for sale prior to the filing of the underlying Bankruptcy case. Baricide had made the initial offer to purchase the Debtor's assets conditional upon being paid up to $200,000 in actual expenses incurred by it in order to evaluate the sale assets should some other bidder overbid Baricide at the auction sale. Because Baricide thereby created a market for the sale, that condition was approved. The auction was spirited, and an over-bidder acquired the assets of the Debtor through the auction paying $1,126,000 more than Baricide had initially offered.

6. Samir Financial II, LLC ("Samir") was a creditor secured by a junior lien on the sale proceeds. It had originally objected to the sale, but in light of the large bid by CXM Acquisition, Inc., and the stated belief of its counsel that enough had been bid to allow for payment on its lien after full satisfaction of the senior lienholder of the Debtor's assets, that objection was withdrawn and the sale was then approved. That sale closed, and the Sale Order provided that all liens on the property sold would attach to the sale proceeds. It also provided that $200,000 was to be set aside in a debtor-in-possession account to cover the maximum amount that could be allowed to Baricide for overbid protection. The first lien secured by the property sold was paid in full out of the sale proceeds. However, unforseen events and costs reduced the net proceeds of sale to $200,000.

7. Pursuant to the foregoing facts, the Amended Motion of Baricide with regard to the overbid protection was allowed as an administrative claim in the underlying Bankruptcy case, but the objection to any payment to Baricide by Samir was sustained effecting the overruling of the Baricide Motion for Payment. The balance of the remaining sale proceeds were payed in partial satisfaction of the secured claim of Samir.

8. On October 21, 2003, the Court entered an Order allowing the secured claim of Samir in the amount of $1,000,000 plus interest and costs. [Plaintiff's Exhibit 7].

9. Accordingly, there still remains the balance of the Samir claim of $800,000 plus interest and costs, the Baricide administrative claim of $200,000, as well as any other allowed administrative and priority claims to be paid prior to the payment of any sums to general unsecured creditors in the underlying Bankruptcy case.

10. At present, the Trustee has possession of $82,292.24 which represents proceeds derived from the settlement of other preference related Adversary actions, as well as interest accrued from the interest bearing account. [Plaintiff's Exhibit 6]. There remains the estimated sum of $37,150 to be collected from further and more recent settlement of Adversary actions, and an estimated $180,557.31 still at issue in these consolidated cases. The total sum of potential funds for distribution by the Trustee in the underlying Bankruptcy case is accordingly $299,999.55.

11. There are $2,609,105.10 worth of unsecured claims on file in the underlying Bankruptcy case. [Plaintiff's Exhibit 4].

12. Accordingly, it appears that general unsecured creditors of the Debtor will receive no dividend on their filed claims in the underlying Bankruptcy proceeding.

13. The Adversary Defendants have been alleged to have received some percentage of the antecedent debts paid within the 90 days prior to the filing of the voluntary Petition of the Debtor in the underlying proceeding alleged to be preferences pursuant to Section 547 of the Bankruptcy Code. [PAC, ¶ 9, SMA, ¶ 9].

14. Any facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

■■■ 1. Under § 547 of the Bankruptcy Code, pre-bankruptcy preferential transfers of debtor's property or payments by debtor made while insolvent may be recovered. *11 U.S.C. § 547(b)*. To recover a payment as a preference, it must be proved that it was (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while debtor was insolvent; (4) on or within 90 days before debtor filed its bankruptcy petition; and (5) enabled the creditor to receive more than it would have received had debtor not made the payment. 11 U.S.C. § 547(b); *In re Energy Co-op., Inc.*, 832 F.2d 997, 999–1000 (7th Cir.1987). All of these elements must be established to avoid a transfer. *Barash v. Public Finance Corp.*, 658 F.2d 504, 507 (7th Cir. 1981). Plaintiff has the burden of proving the first, second, fourth, and fifth elements of § 547(b) by a preponderance of the evidence. 11 U.S.C. § 547(g); *In re Prescott*, 805 F.2d 719, 726 (7th Cir.1986).

■■■ 2. As to the third element, insolvency, the debtor is presumed as a matter of law to be insolvent during the ninety days prior to the bankruptcy petition filing date. 11 U.S.C. § 547(f); *see also, Barash*, 658 F.2d at 507. This presumption is not conclusive and may be rebutted by preference Defendants, but the burden of proof remains on the Plaintiff. *See, Matter of Taxman Clothing Co., Inc.*, 905 F.2d 166, 168 (7th Cir.1990); *Steege v. Affiliated Bank/North Shore National (In re Alper-Richman Furs, Ltd.)*, 147 B.R. 140, 153 (Bankr.N.D.Ill.1992).

3. Insolvency is defined in the Bankruptcy Code as a "financial condition such that the sum of [an] entity's debts is greater than all of such entity's property, at fair valuation...." 11 U.S.C. § 101(32).

■■■ 4. "Fair valuation" for purposes of § 101(32) is generally defined as the going concern or fair market price "[u]nless a business is on its deathbed." *Utility Stationery Stores, Inc. v. Southworth Company (In re Utility Stationery Stores, Inc.)*,

12 B.R. 170, 176 (Bankr.N.D.Ill.1981). Under those circumstances, a liquidation value should be used to value the assets. *Matter of Taxman Clothing Co., Inc.,* 905 F.2d 166, 170 (7th Cir.1990); *Fryman v. Century Factors, Factor for New Wave (In re Art Shirt Ltd.),* 93 B.R. 333, 341 (E.D.Pa.1988); *Neuger v. Casgar (In re Randall Construction),* 20 B.R. at 183–84. Any other valuation method would be misleading and would, in fact, fictionalize the company's true financial condition. *Id.*

■ 5. A Debtor's schedules are not persuasive, let alone dispositive or controlling. *In re Schwinn Bicycle Co.,* 192 B.R. 477, 487 (Bankr.N.D.Ill.1996). The sale of substantially all of the Debtor's assets shortly after the filing of a petition for relief, as is the case here, is a more accurate measure of the Debtor's assets and possible insolvency, and is the kind of evidence that can be reasonably relied upon by courts in determining the issue of the debtor's solvency or lack thereof. Indeed, the Seventh Circuit in *Taxman* has noted the great potential for inaccuracy in relying solely on a schedule of assets and liabilities in assessing insolvency. *Matter of Taxman Clothing Co., Inc.,* 905 F.2d at 169–170 (7th Cir.1990).

6. Other courts (including this one) have held that the presumption of insolvency in 547(f) is not rebutted by evidence of asset values listed in the debtor's bankruptcy schedules. See, *In re Schwinn Bicycle Co.,* 192 B.R. at 487; citing to *W.L. Mead, Inc. v. Central States Pension Fund (In re W.L. Mead, Inc.),* 70 B.R. 651, 655 (Bankr.N.D.Ohio 1986). The court held that while statements made in a Debtor's schedules can constitute evidence which may be used in subsequent proceedings, the magnitude of the discrepancy between the scheduled values and the actual sales prices strongly suggests that any inference which could be drawn from the schedules is not worthy of serious consideration. *Id.*

7. It is proper under circumstances such those found here to value the assets at the value actually brought in the open market and not its balance sheet value, because, "[i]n the last analysis, all sophisticated valuations must yield to the realities of the marketplace." *In re Schwinn Bicycle Co.,* 192 B.R. at 488.

■ 8. Based upon the foregoing, the Court finds that the consolidated Defendants have not rebutted the presumption of insolvency as set forth at Section 547(f). Nonetheless, even if the Defendants had rebutted the presumption of insolvency, the actual sale of the Debtor's assets through the auction process actually yielded a substantial amount less than would be required to satisfy the Debtor's liabilities. Accordingly, there is no question that the Debtor's debts far exceeded its assets during the pre-petition preference period. Section 547(b)(3) has been satisfied in these consolidated actions.

■ 9. Finally, as the evidence clearly indicates that general unsecured creditors will receive nothing on their claims in the underlying bankruptcy case, the fact the Defendants herein received anything in payment of antecedent debts allowed them to receive more than they would under a Chapter 7 liquidation of the Debtor's assets. Accordingly, Section 547(b)(5) is also satisfied in these consolidated actions.

10. Since the issues hereby determined were set for trial under Rule 16(e) Fed. R.Civ.P. [Rule 7016 Fed.R.Bankr.P.] which controlled the procedure for determining the issues thereby bifurcated, the Defendants are bound hereby and will be foreclosed from offering any evidence at their separate trial on the issues hereby determined unless permitted by further order

on notice and motion for good cause shown at least 28 days before trial.

### CONCLUSION

For the reasons stated above, these Findings and Conclusions are entered in each of the three consolidated Adversary cases appearing in the caption of this order. Further individual trials on the remaining issues as to each of the Defendants will be scheduled and held, following which appropriate final judgments will be entered. The foregoing Findings of Fact and Conclusions of Law are made by this Court pursuant to Fed.R.Bankr.P. 7052. Pursuant to Rule 7016 Fed.R.Bankr.P., each Defendant is barred from offering any evidence on the issues hereby decided unless granted leave to do so by further order on motion and notice presented at least 28 days prior to their respective trial dates.