**In the Matter of Edward L. CAMP, Jr., and Edna E. Camp, Debtors.**

**Bankruptcy No. 80–02953A.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

May 19, 1981.

George J. Polatty, Jr., Roswell, Ga., for debtor.

H. Gilman Hudnall, Goodman & Hudnall, Atlanta, Ga., for creditor.

IN PROCEEDINGS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

A. D. KAHN, Bankruptcy Judge.

## MEMORANDUM OF OPINION

In this case the court is being called upon to approve a reaffirmation agreement entered into by the debtor, Edward L. Camp, Jr., and one of his creditors, Sears, Roebuck and Company. The agreement was presented to the court by counsel for Sears at the debtor's discharge hearing held on November 5, 1980.

In its motion for approval of the reaffirmation agreement, Sears urged that the agreement would not be an undue hardship on the debtor and that it was in the best interest of the debtor, thus invoking Section 524(c)(4)(A) of the Bankruptcy Reform Act of 1978 (the "Code"). Sears further argued

that the "best interest" test was satisfied because potential litigation costs would be avoided by the debtor. The court, however, has concluded that the agreement cannot be approved for the reasons stated below.

The standards for approval of a reaffirmation agreement are found in Section 524 of the Code. The applicable provisions of that section state:

> ... the court approves such agreement as—
>
> (A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; *and*
>
> (ii) in the best interest of the debtor; *or*
>
> (B)(i) entered into in good faith; *and*
>
> (ii) in settlement of litigation under section 523 of this title ... (emphasis added)

11 U.S.C. § 524(c)(4).

In the case *sub judice* it is evident that the proper standard is that found in Section 524(c)(4)(B) set forth above, because the parties entered into the agreement "in settlement of litigation under Section 523 of this title ...." 11 U.S.C. § 524(c)(4)(B)(ii). True, there was no formal adversary complaint filed, as contemplated by Section 523(c) of the Code, 11 U.S.C. § 523(c), and the practice of this court. However, for purposes of Section 524(c)(4)(B)(ii), it is unnecessary that a creditor actually file a complaint to determine the dischargeability of a debt, as long as the parties perceive that a potential claim exists, and the creditor uses the threat of a lawsuit as leverage in negotiations with the debtor. Such were the actual circumstances in this case. Therefore, Sears' reliance on the tests of "undue hardship" and "best interest" set forth in § 524(c)(4)(A)(i) and (ii) is misplaced as the two sections 524(c)(4)(A) and (B) are mutually exclusive.

Having determined that the agreement was made in "settlement of litigation," 11 U.S.C. § 524(c)(4)(B)(ii), the court will proceed to determine whether the parties entered into the agreement "in good faith," 11 U.S.C. § 524(c)(4)(B)(i), which is the absolute prerequisite to approval.

The meaning of good faith and the methods for the determination of its existence are not explicitly set forth in the Code, nor are the parameters of the required judicial inquiry. To some extent each case must rest on its own facts. Suffice it to say the Finder of Fact ultimately realizes its presence or absence. The court will hereafter attempt to articulate its thoughts on the subject. Its definition of good faith may be peculiar to the bankruptcy discharge hearing since Congress has placed this unique, heavy and independent burden upon the bankruptcy judge to approve or disapprove agreements freely made between the parties. The court strongly believes in freedom of contract between consenting parties who are *sui juris.* In fact, such a process involves no less than one-half of our common law. However, the legislative branch of government has thrust upon the bankruptcy judge the onerous and sometimes distasteful duty of standing *in loco parentis* to debtors who are in the main represented by counsel. In this unenviable position, the court must at times substitute its best judgment for that of others. It is a statutory mandate.

### What Is Meant By Good Faith?

First, good faith is mutual. The court must not only look into the good faith of the debtor, but also the creditor. Part of "good faith" means that all parties to the transaction have full knowledge of all relevant facts. Necessarily, the parties must engage in full and complete disclosure thereof to each other, and to the court. See *In re Wiggles,* 7 B.R. 373, 6 B.C.D. 1326 (Bkrtcy.N.D.Ga.1980).

However, good faith goes beyond the facts, and there must be demonstrated an awareness by counsel and the debtor of the *law* as it relates to the particular facts of the case. Such an awareness is especially crucial in the case of a debtor, who must necessarily rely on others, including his attorney, for information concerning his available options under the Code. The debtor's decision must not be one based on

mere convenience, in the absence of other relevant findings.

### Scope Of Judicial Inquiry.

■ How much is too little, how much too much, again a difficult matter to measure. Obviously, the case should not be tried *in toto*. However, since the burden is the court's by Congressional mandate, the judge should base the scope of his inquiry on the facts of each case and to *his* satisfaction in order to determine that, not only counsel, but the debtor is fairly apprised of the nature, consequences, strengths and weaknesses of the claim, and that the debtor has made an informed decision.

If counsel or the debtor is laboring under a misapprehension of the law as applied to the particular facts at hand, the court must exercise its independent judgment and discuss the matter openly and perhaps refuse a finding of good faith and, therefore, negate the reaffirmation. "Good faith," if it has any real meaning, cannot exist in the atmosphere of ignorance, either of the law or fact, by party or counsel.

The facts of this case were placed before the court rather informally and briefly at the general discharge hearings. The debtor purchased a video tape recorder from Sears at a price of approximately $767.00 and sold it prior to filing bankruptcy. Although Sears retained a security interest in the recorder, the debtor stated he was unaware of this at the time of purchase. He continued to make payments to Sears after he sold it until he could no longer. After the initiation of the bankruptcy proceeding, Sears threatened to file a complaint to determine the debt nondischargeable because of the debtor's sale of the property, but the debtor agreed to reaffirm the debt in settlement of the potential lawsuit against him. Presumably he thought that because he sold the property, *ipso facto* the debt became nondischargeable in his bankruptcy. The settlement amount was set at $450.00, repayable in monthly installments of $38.00 per month. The value of the recorder was set at $538.00.

The potential suit was based on the authority of Section 523(a)(6) of the Code, which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

In the good faith inquiry, the court cannot help but examine the merits of Sears' claim based on the evidence adduced at the discharge hearing. In so doing the court is cognizant of the law governing dischargeability, including the fact that Sears has the burden of proof in asserting any claim of nondischargeability. *Lowe's of Georgia, Inc. v. Moore*, No. 80–0051A (B.Ct.N.D.Ga. April 3, 1981).

■ Whether an act constitutes a willful and malicious injury to another or to the property of another rests on the facts of each case. However, there are guideposts. Clearly under the new Bankruptcy Code the less strict standard of "reckless disregard" of the debtor, which was enunciated by the Supreme Court in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), is no longer sufficient to uphold a finding of nondischargeability. See H.R.Rep.No. 595, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The act must be deliberate and intentional *and* the injury malicious. The court submits that the burden of proof to be borne by the plaintiff is onerous indeed.

■ Sears' only interest in the property was presumably under the Uniform Commercial Code and in the nature of a purchase money security interest. The Sears security agreement is not in evidence before the court. It is extremely doubtful that the debtor by selling his *own* property could be guilty of conversion by the very definition of that term. He may well have breached the terms of his contract with Sears; however, standing alone, this fact would not constitute enough to carry the plaintiff's burden of proving a case for nondischargeability under the section of the Bankruptcy Code here in question. Furthermore, the debtor stated that he did not know Sears had a security agreement covering the property, and, subsequent to the sale, he

continued to make payments on his account. Such facts negate any finding by the court of aggravating circumstances or malicious action within the meaning of § 523(a)(6) of the Bankruptcy Code. The court concludes that Sears did not have a sufficiently viable claim to form the foundation for *any* reaffirmation agreement.

As the debtor was not fully informed and aware as to the extremely weak nature of Sears' claim against him, the court cannot find that the requisite "good faith" is present to support the reaffirmation agreement. A decision to become *legally* obligated on a pre-bankruptcy debt is one that should not be taken lightly and reached casually. This goes hand in glove with the Supreme Court's enunciation in *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), and the Congressional intent that one of the overriding purposes of the bankruptcy laws is granting the debtor a fresh start, as free of debt as possible, so that rehabilitation is a realistic goal.

The court is aware that the deadline for filing a complaint to determine dischargeability of a debt has passed. Sears undoubtedly relied on the settlement agreement, and now no longer has the opportunity to fully develop the facts at a trial. This demonstrates one risk of such a settlement agreement disguised as a § 524(c)(4)(A) reaffirmation where the creditor fails to file its lawsuit or get an appropriate court order extending the time within which to do so in the event of the court's disapproval of said agreement.

Because both parties did not enter the settlement agreement in good faith, the court cannot approve the parties' agreement, and therefore, the creditor's motion for approval is DENIED.