In the Matters of Beverly Ann DERRITT, Debtor.

John W. RAGSDALE, Jr., Trustee, Plaintiff,

v.

CREDITHRIFT OF AMERICA, INC., Defendant.

In re George A. STRATIGOS and Constance Stratigos, Debtors.

John W. RAGSDALE, Jr., Trustee, Plaintiff,

v.

GENERAL ELECTRIC CREDIT CORPORATION, Defendant.

Bankruptcy Nos. 81–01215A, 81–01211A. Adv. Nos. 81–0878A, 81–0888A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

May 31, 1982.

Peter Wynkoop, Atlanta, Ga., for plaintiff.

Kirby G. Bailey, Decatur, Ga., Doug Wallace, Atlanta, Ga., for defendant.

## MEMORANDUM OF OPINION

A. D. KAHN, Bankruptcy Judge.

The above-styled cases are consolidated for purposes of this opinion because they involve a common issue: whether the Trustee has stated a cause of action where he seeks to recover as preferential, installment loan payments made by a consumer-debtor to a creditor, on a consumer debt that is secured by property of the consumer-debtor, and made in the ordinary course of the consumer's affairs pursuant to the loan agreement, but during the ninety (90) days before the consumer filed for relief under the Bankruptcy Code (the "preference period"), 11 U.S.C. § 101 *et seq.*, even though the debtor and the creditor have agreed to the reaffirmation of the debt, and that agreement has been approved by the court. In neither of the cases are there assets available for a Chapter 7 distribution to creditors. In this determination it is as-sumed that each creditor is *under* secured, *i.e.*, the total amount of the debt exceeds the value of the collateral.

First, the relevant facts are set forth below.

### I. Ragsdale v. General Electric Credit Corp. (In re Stratigos)

The debtors made payments to General Electric Credit Corporation ("GECC") totalling approximately $1,071.00 under their revolving charge account. Within ninety (90) days of the payments the debtors filed a petition seeking relief under Chapter 7. At that time the balance due on the account was $4,135.98. The indebtedness was secured by furniture and decorating accessories belonging to the debtors.

The court approved a reaffirmation agreement between the debtors and GECC.

The Trustee filed a motion for summary judgment, stating that the issue was whether a cause of action had been stated. GECC filed a motion to dismiss; it assumed *arguendo* that the indebtedness was undersecured.

### II. Ragsdale v. Credithrift of America, Inc. (In re Derritt)

The debtor financed the purchase of a 1980 Buick LeSabre through Defendant Credithrift of America, Inc. ("Credithrift"). Within ninety (90) days prior to filing a petition for relief under Chapter 7, the debtor made payments totaling approximately $806.48 on the account. As of March 20, 1981, the date of the filing of the petition, the balance due on account was $10,441.54. Credithrift has argued that the value of the automobile was at least $7,500.00 as of the same date.

The court approved a reaffirmation agreement between the debtor and Credithrift.

The debtor's valuation of her exempt property was $4,150.00, of which $650.00 was attributed to the alleged preferential payments. In addition to seeking recovery of the alleged preference, the Trustee objected to the debtor's claim of exemption of the $650.00.

## DISCUSSION OF THE ISSUES

In determining whether the Trustee has a cause of action against the Defendant-Creditors in these cases, the issue is whether the requirements of 11 U.S.C. § 547(b)(5) have been satisfied. That provision states:

> ... the trustee may avoid any transfer of property of the debtor—
>
> ... that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5).

■ According to one commentator, "Section 547(b)(5) is the heart of the preference prohibition because it requires a comparison between what the creditor actually received and what other creditors in its class would receive in a Chapter 7 liquidation." Miller & Cook, *A Practical Guide to the Bankruptcy Reform Act*, p. 306 (1979). It also requires a determination of what the creditor would receive in a Chapter 7 distribution. A payment may be deemed a preference if it enables the creditor to receive more than it would have received under the distributive provisions of the Code. *Ibid.*

In these cases the Trustee has argued that the requirements of 11 U.S.C. § 547(b)(5) have been satisfied. That argument is two-pronged.

## I. THE TRUSTEE'S ARGUMENT: THE DEFENDANT–CREDITORS RECEIVED A PREFERENCE BECAUSE THEY RECEIVED MORE THAN OTHER UNSECURED CLAIMANTS.

■ Generally, payments made to secured creditors are not preferential because the payments do not diminish the debtor's estate. *Azar v. Morgan*, 301 F.2d 78, 80 (5th Cir. 1962). In the cases at bar the Trustee's theory of recovery is based on the contention that each Defendant-Creditor is not fully secured because the value of the collateral is less than the total amount of the debt. In other words, the creditor is *under* secured.

As a consequence of being undersecured, it is argued, each Defendant-Creditor has both a secured claim, measured by the value of the collateral, and an unsecured claim, measured by the difference between the total amount of the debt, and the value of the collateral. 11 U.S.C. § 506.

The next step in the Trustee's theory is based on a principle of law stated in *High Co. v. Arrington*, 45 Ga.App. 392, 165 S.E. 151 (1932): payments to a creditor with both secured and unsecured claims must first be credited to the unsecured portion of the debt.[1]

Therefore, according to the Trustee, payments made to the Defendant-Creditors during the preference period must be apportioned to the *un*secured claim of each Defendant-Creditor. Because other creditors of the debtor holding unsecured claims receive nothing, since there are no assets available for distribution, the Trustee reasons that the *under*secured Defendant-Creditors received a voidable preference when they received payments during the preference period. *See Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir. 1981).

## II. THE TRUSTEE'S ARGUMENT: THAT THE DEFENDANT-CREDITORS RECEIVED A PREFERENCE BECAUSE THEY RECEIVED MORE THAN THEY WOULD HAVE RECEIVED HAD THEY RECEIVED PAYMENT PURSUANT TO THE PROVISIONS OF CHAPTER 7.

Unlike the first argument, which compares the Defendant-Creditors to other creditors of the debtor, this second argument focuses solely on the Defendant-Creditors, and compares what they received dur-

---

1. GECC cited *Ga.Code Ann.* § 96–914 (Supp. 1981) in support of its position. That provision specifies, *inter alia*, that payments on revolving accounts shall be applied "first to unpaid time price differential or finance charge; ...".

ing the preference period to what they would receive under the distributive provisions of the Bankruptcy Code. The Trustee argues that each Defendant-Creditor received a voidable preference because it received more in the form of preferential payments than it would have received had it received payment pursuant to the provisions of Chapter 7, in which case it received nothing.

The arguments of the Trustee will now be considered.

The Trustee argued that the Defendant-Creditors received payment on account of their unsecured claims, while other creditors holding unsecured claims of the debtor received nothing. In these cases the Trustee has assumed that the Defendant-Creditors, who hold both secured and unsecured claims, are in the same class vis-à-vis the debtor as other creditors holding only unsecured claims. In effect the Trustee has posited that there is a large class of creditors holding unsecured claims, and that the Defendant-Creditors received preferential treatment at the expense of other members of that class. This assumption should be reexamined, however, in light of the facts of each case, which are discussed below, and which demonstrate the inequity that results the foregoing classification. The discussion reveals why, in these preference actions, the Defendant-Creditors are in a class by themselves.

These cases involve consumer debts. The alleged preferential payments were ordinary payments made under consumer loan agreements. Each debtor and Defendant-Creditor agreed that the debtor would reaffirm the debt, and that agreement was approved by this court pursuant to 11 U.S.C. § 524.

The reaffirmation agreement, upon approval by the court, demonstrates the value, not only of the property, but the entire transaction between the debtor and creditor. Generally this agreement takes into consideration a multitude of factors. First, after consumer goods are sold "new" for the first time, it may be safely said that in terms of fair market value, the goods are never "worth" the original sales price again. Consumer goods depreciate rapidly, from the time that they are "driven off the lot," so to speak. Secondly, after a bankruptcy, without the use of credit, it becomes difficult, if not impossible, for the consumer-debtor to purchase major items that are essential to daily living. Finally, under installment loan agreements, where goods are paid for over time, the interest factor may add a considerable amount to the sales price, with the result that it is even more difficult for the fair market value of the collateral to approximate the amount due under the original contract.

■ The approval of the reaffirmation agreement by the court effectively validates the value of the goods that are the subject of the reaffirmation agreement. 11 U.S.C. § 524. Such approval is not easily obtained. *See, e.g., In re Camp*, 11 B.R. 85, 7 B.C.D. 852 (Bkrtcy.N.D.Ga.1981).

All the foregoing considerations show that those creditors who enter reaffirmation agreements which are subsequently approved by the court, and who have a security interest in property of the debtor in addition to an unsecured claim, do not stand on the same footing vis-à-vis the debtor as other creditors holding only unsecured claims. Creditors such as the ones in the cases at bar should not, for preference purposes, be classified with and compared to creditors holding only unsecured claims.

Because the Defendant-Creditors are in a class by themselves, contrary to what the Trustee has argued, it is unnecessary to compare them to any other creditors to determine whether the Defendant-Creditors received a voidable preference. The remaining inquiry focuses on the Trustee's second argument.

■ The Trustee theorizes the Defendant-Creditors did receive more as a result of the alleged preferential payments than they would have received had they received payment pursuant to the provisions of Chapter 7. The Trustee assumes that, under the provisions of Chapter 7, the Defendant-Creditors receive virtually no distribution.

However, the Trustee's assumption ignores the fact that the reaffirmation agreement gives new life to the subject indebtedness. 11 U.S.C. § 524. The reaffirmation agreement places the Defendant-Creditors on a different footing than the claims of the other creditors, and makes it meaningless to consider distribution to the Defendant-Creditor. Finally, it is entirely probable that the Defendant-Creditor might have chosen not to enter the reaffirmation agreement with the debtor, had the debtor not made the payments and fulfilled his part of the bargain during the preference period. In sum, the totality of the circumstances surrounding the reaffirmation agreement warrant the conclusion that the Defendant-Creditors did not receive a preference. It would be inequitable to conclude otherwise.[2]

Neither the approval of the reaffirmation agreement, nor the conclusion here today detracts from the debtor's fresh start, the goal of bankruptcy. Other considerations are relevant. If the Trustee were permitted to recover from the Defendant-Creditors, the Trustee would first collect his fee and his expenses, leaving only a *de minimis* amount for distribution to creditors holding unsecured claims.

One peculiar result of allowing the Trustee to recover would be that the Defendant-Creditor would receive payment on at least two and perhaps three occasions: first, the ordinary payment prior to bankruptcy; second, the payments in the performance of the reaffirmation agreement, which are approved by the court; and third, payments by the trustee in the course of distribution of the estate.

Finally, the bankruptcy court cannot discourage payment of consumer debts in the ordinary course of a consumer's affairs, any more than it can encourage windfalls for the Trustee at the expense of the debtor and the creditors alike.

Based on all the foregoing considerations, any recovery by the Trustee in these cases should be DENIED.

The court disapproves of *Barash v. Public Finance Corp., supra,* to the extent, if any, it is inconsistent herewith.

The only remaining issue arises out of one debtor's attempt to claim as exempt any alleged preferential payments that the Trustee might have recovered. Actually, such issue is moot, since the Trustee may not avoid any transfers in these cases. However, the court notes that 11 U.S.C. § 522(i)(2) does not permit the exemption of any funds that were voluntarily transferred by the debtor.

The instant Opinion constitutes findings of fact and conclusions of law.

Appropriate judgments are entered contemporaneously herewith.

---

**2.** The words of Justice Douglas are appropriate here: "... we do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable prin-

ciples govern the exercise of Bankruptcy jurisdiction." [citations] *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).