**William D. SEIDLE, as Trustee for the Estate of Airlift International, Inc., Debtor, Plaintiff,**

v.

**GATX LEASING CORPORATION, Defendant.**

No. 83–2575–CIV–EPS.

United States District Court, S.D. Florida Miami Division.

Nov. 14, 1984.

Dennis M. Campbell, Miami, Fla., for plaintiff.

R. Thomas Farrar, Miami, Fla., Henry B. Gutman, New York City, for defendant GATX Leasing Corp.; Holland & Knight, Miami, Fla., O'Sullivan, Graev, Karabell & Gross, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

The Plaintiff, William D. Seidle, as Trustee for the Estate of Airlift International, Inc., ("Airlift"), the Debtor, initiated this bankruptcy action to recover $326,902.32. Plaintiff claims that this amount is the sum of several preferential transfers made by Airlift to GATX Leasing Corporation ("GATX") within ninety days of the filing of Airlift's petition for relief under Chapter 11 of Title 11 of the United States Code. *See* 11 U.S.C. Sec. 547. This case, however, is not a typical preference action, where the only issue presented is whether the payments were made within the ninety day pre-petition preference period and otherwise meet the technical requirements of Sec. 547. Here, Airlift entered into a post-petition stipulation pursuant to 11 U.S.C. Sec. 1110, approved by the Bankruptcy Court on August 11, 1981, which required that Airlift cure all pre-and post-petition defaults with GATX. Thus, this case requires this Court, for the first time, to examine the complex relationship between Sec. 1110 and Sec. 547.

THE FACTS:

Pursuant to a written agreement dated September 30, 1978, Airlift purchased from GATX one McDonnel-Douglas DC8–63CF aircraft and five Pratt & Whitney JT3D–7 turbofan engines (collectively referred to

as "aircraft"). The unpaid balance of the purchase price was covered by a promissory note which required Airlift to make 120 monthly payments of principal and interest, each in the amount of $130,951.16. On June 29, 1979, Airlift executed an aircraft chattel mortgage granting GATX a security interest in the aircraft to secure the payments due under the note. This mortgage provided that GATX was entitled to repossess the aircraft in the event Airlift defaulted under the note.

Airlift made the monthly payments required under the note through February 26, 1981. The payment due February 26 was made on March 3, 1981, within the ten-day cure period provided by the note.[1] Airlift did not make the regular monthly installment payments due on March 26 and April 26, 1981, but instead made partial payments to GATX of $65,000.00 on or about April 9 and May 8, 1981, and $65,-951.16 on or about April 22, 1981. It is these four payments, totalling $326,902.32, which Plaintiff challenges in the instant case. Airlift also failed to make any portion of the payment due on May 26, 1981.

On June 4, 1981, Airlift filed the petition in the United States Bankruptcy Court for the Southern District of Florida. Upon the filing of the petition, GATX's contractual right to take immediate possession of the aircraft was automatically suspended by operation of 11 U.S.C. Sec. 362(a), which, with certain limitations, stays any action by creditors to enforce claims against a debtor or to obtain possession of property from the bankruptcy estate.

As the secured party under a purchase-money aircraft chattel mortgage, however, GATX was afforded the special protection of 11 U.S.C. Sec. 1110. The effect of this section, which creates additional rights for those who finance aircraft purchases, is to curtail the power of the bankruptcy court to enjoin aircraft financers, such as GATX, from taking possession of their collateral in accordance with their contractual rights. Under Section 1110, GATX had the right to repossess the aircraft unless, within sixty days of the filing of the bankruptcy petition,[2] Airlift, with court approval, (i) agreed to perform its obligations under the note and mortgage which became due thereafter, *and* (ii) cured any existing defaults under its agreements with GATX. Prior to the expiration of that sixty-day period, however, the automatic stay imposed by Sec. 362 was still effective against GATX.

After the sixty-day period expired and Sec. 1110 deprived the bankruptcy court of any power to enjoin GATX from repossessing the aircraft, Airlift and GATX entered into a stipulation, pursuant to Sec. 1110, permitting Airlift's continued use of the aircraft subject to certain specified conditions. As the stipulation acknowledged, GATX had the right to immediate possession of the aircraft, since the sixty-day period had expired on August 5, 1981. The stipulation obligated Airlift to cure its prior defaults in "accordance with Subsection (a)(2) of Section 1110, Title 11, United States Code." Among the defaults Airlift was required to cure were all overdue payments under the note and mortgage.[3]

On August 11, 1981, at a hearing attended by counsel for various creditors and for the Creditors' Committee, Airlift presented the stipulation to the bankruptcy court for approval. Although certain creditors objected to the stipulation, *see, e.g.,* Transcript at 49, it was approved by the bankruptcy court. The bankruptcy court was

---

**1.** Plaintiff alleges that this payment of $130,-951.16—the earliest of the payments he attacks as preferential—was not made until March 6, 1981 (the ninetieth day before the petition was filed), despite the fact that it was received and deposited by GATX on March 3 and honored by Airlift's bank on March 5, 1981. For purposes of dealing with Defendant's Motion for Summary Judgment, however, this Court will assume that the payment did not occur until March 6.

**2.** The Trustee and the secured party may agree, subject to the court's approval, to extend the sixty-day period. *See* 11 U.S.C. Sec. 1110(b).

**3.** In addition to curing its defaults under the note and mortgage, Airlift was obligated to cure its non-cash defaults under the agreements by paying certain maintenance bills (the non-payment of which had resulted in liens against the aircraft's engines).

apparently persuaded by the testimony of Airlift's president and counsel that the aircraft was absolutely essential to its operations.[4]

That aspect of the stipulation which required a cure of all existing defaults was discussed repeatedly during the course of the hearing. GATX made it clear to the court, to the Debtor and to the other creditors present that it was prepared and intended to take immediate possession of the aircraft if the stipulation were not approved, including the provision for making overdue payments.

On November 9, 1981, the bankruptcy court appointed trustees to replace the management of Airlift in the Chapter 11 bankruptcy proceeding.[5]

On October 13, 1983, Airlift Trustee Seidle filed the instant action, seeking to set aside as preferences under 11 U.S.C. Sec. 547 the $326,902.32 in payments made by Airlift to GATX under the note which allegedly fell within ninety days of the filing of the petition. On June 7, 1984, GATX filed a Motion for Summary Judgment. GATX claims that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. This Court agrees.

THE ARGUMENT:

Plaintiff attempts to set aside, as preferences, payments which, had they not been made pre-petition, Airlift would have been required to make after the petition was filed, pursuant to the stipulation. There are three reasons why this effort must fail: 1) Plaintiff is estopped from challenging the allegedly preferential payments; 2) The transfers were authorized by 11 U.S.C. Sec. 1110 and did not improve GATX's position under the Code; and 3) Permitting recovery of the aircraft payments would violate the policies of 11 U.S.C. Sec. 1110. Each will be discussed in turn.

1. Plaintiff is Estopped from Challenging the Allegedly Preferential Payments.

 Defendant is correct in arguing that Plaintiff is estopped from denying the validity of the allegedly preferential payments by its execution of a stipulation which was predicated on their validity and by its representations to the bankruptcy court in seeking approval for that stipulation.[6]

 The doctrine of equitable estoppel is one with a long history in the common law and its requirements are well established. The fifth circuit has recognized that an estoppel claim requires proof of the following:

(1) a representation by the party estopped to the party claiming the estoppel as to some material fact, which representation is contrary to the condition of affairs later asserted by the estopped par-

**4.** Counsel to Airlift told the Bankruptcy Court:

We cannot function without that aircraft. We have engaged in hours and weeks of study of various types of schedules both before and after we filed on June 4. This company cannot mount a viable operation without at least one DC–8–63 aircraft. This is the only one we have. There is none other available to us on any terms we can live with. We explored that matter thoroughly long before today.
Transcript at 70.

**5.** After their appointment, the trustees continued to possess and make use of the aircraft but never made any payments to GATX as required by the stipulation. Specifically, the trustees failed to make the payment due on November 26, 1981. On December 7, 1981, after the expiration of the ten-day cure period of the note, and forty days after Airlift's last payment, GATX

took possession of the aircraft. GATX subsequently filed an administrative claim for $178,-966.59 based on Airlift's retention of the aircraft during this period. All but $8,597.48 was rejected by this Court. An appeal is now pending in the United States Court of Appeals for the Eleventh Circuit.

**6.** Even though the Airlift trustee was not a party to the stipulation, he is nonetheless bound by its terms. See In re Philadelphia Athletic Club, Inc., 17 B.R. 345, 347 (Bankr.E.D.Pa.1982) ("the trustee is a successor to the debtor in possession and is, in general, bound by the terms of any contract executed by the debtor while it was the debtor in possession").

11 U.S.C. Sec. 1107(a) and its legislative history confirms this interpretation. See S.Rep. No. 95–989, 95th Cong.2d Sess. 116 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

ty; (2) a reliance upon this representation by the party claiming the estoppel; and (3) a change in the position of the party claiming the estoppel to his detriment, caused by the representation and his reliance thereon.

*Travelers Indemnity Co. v. Swanson,* 662 F.2d 1098, 1101 (5th Cir.1981). The equitable principles on which the doctrine of estoppel is based are fully applicable in a bankruptcy context. The United States Supreme Court noted that "[t]here is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). *See also Valente v. Savings Bank of Rockville,* 34 B.R. 362, 367 (Bankr.D.Conn.1983) (bankruptcy court is a court of equity).

As Defendant contends, "[i]t would be difficult to imagine circumstances more appropriate for the application of the doctrine of equitable estoppel than those presented by the instant case. The stipulation and the transcript of the August 11 hearing make it clear that the first requirement—a material representation contrary to the condition of affairs later asserted by the estopped party—has been met. The stipulation states the Debtor has agreed to cure all defaults, as required by 11 U.S.C. Sec. 1110(a)(2), and recites that the amount of such defaults was $234,920.40 as of August 6, 1981. The Debtor specifically represented to the bankruptcy court that the payments required by the stipulation would make the Debtor current on payments under the note and urged its own right "to bring that contract up free of defaults." Transcript at 9.

This Court is of the opinion that it must have been assumed by everyone involved in the approval process that any payments Airlift already made would be undisturbed; otherwise the amount of such payments would have to have been included in the sum needed to make the contract "free of

defaults." The cure provisions in the stipulation, Airlift's participation in the calculation of the defaults and Airlift's affirmative representations before the bankruptcy court constitute representations by the Debtor as to the validity of the payments challenged here.

The second and third elements of estoppel—reliance by and detriment to GATX—are supplied by the terms of the stipulation and Section 1110.[7] First, GATX relied on the fact that the allegedly preferential payments had been made in calculating the default payments to which it had a statutory right. By accepting $234,920.40 as payment in full for all defaults, rather than insisting on the over $550,000.00 which, under Plaintiff's theory, was the actual amount owed, GATX relied on the fact that the earlier payments had been made and changed its position to its detriment as a result of its reliance.

Second, GATX forebore from exercising its clear statutory right to repossess the aircraft. The transcript of the hearing before the bankruptcy court is clear that GATX was prepared and fully intended to take immediate possession of the aircraft if the stipulation with its provision for repayment of all defaults was not approved. *See* Transcript at 6–8, 76–81. It is equally clear that the default repayments (together with Airlift's other undertakings) were a *quid pro quo* for that forebearance. As a result of GATX's forebearance, Airlift retained possession of the aircraft. The Airlift estate would be unjustly enriched if it were now permitted to avoid the conditions on which possession of the aircraft was premised.

2. The Transfers were Authorized by 11 U.S.C. Sec. 1110 and did not Improve GATX's Position under the Code.

◼ A payment is not a voidable preference unless it improves the position the

---

7. While reliance and detriment frequently involve disputed issues of fact, courts have recognized that these issues may be disposed of on summary judgment where, as here, the material

facts are not in dispute. *See, e.g., Travelers Indemnity Co. v. Swanson,* 662 F.2d 1098, 1102 n. 2 (5th Cir.1981).

creditor would otherwise have enjoyed under the distributive provisions of the Code. 11 U.S.C. Sec. 547(b)(5); *In re Conn*, 9 B.R. 431 (Bankr.N.D.Ohio 1981). In order to assess whether the payments at issue here somehow improved GATX's position by giving it rights it did not already have, it is essential that they be considered against the background of Section 1110.

■ The question presented is whether GATX received more from Airlift by virtue of having received payments during the ninety-day preference period than it would have if those payments had never been made. This Court concludes that it did not. If the $326,902.32 at issue had not been paid before the petition was filed, GATX would have received that amount, together with the remaining $234,920.40 Airlift owed, in August 1981, when the stipulation was approved. Either way GATX would have received and kept the full amount at issue. Had the same $326,902.32 been paid to GATX under the stipulation, there could be no conceivable argument made that it constituted a preference. Indeed, most of the $234,920.40 paid under the stipulation was attributable to defaults on payments which became due during the preference period. Yet the Trustee has not sought, and could not seek, to set aside those payments. This Court is of the opinion that there is no basis in law or logic for Plaintiff's claim that the $326,902.32 in payments which relate to the same time period should be treated differently.[8]

Under similar circumstances, the court in *Matters of Derritt*, 20 B.R. 476 (Bankr.N.D.Ga.1982), dismissed a preference action brought to recover installment loan payments made by a consumer-debtor under the terms of two loan agreements which were reaffirmed by the debtor post-petition. The court rejected the Trustee's argument that the payments should be set aside because the Defendant creditors received more than similarly situated creditors; the court held that the approval by the court of the reaffirmation agreement placed the Defendant creditors in a "class by themselves." *Id.* at 479. Similarly, the court rejected the Trustee's contention that the Defendant creditors received more as a result of the allegedly preferential payments than they would have from a Chapter 7 distribution.[9] The court found that "the Trustee's assumption ignores the fact that the reaffirmation agreement gives new life to the subject indebtedness .... and makes it meaningless to consider distribution to the Defendant-Creditor." *Id.* at 480.

Like the creditors in *Derritt*, GATX occupies a special position by virtue of Section 1110 and by virtue of the "new life" conferred on the subject debt by the bankruptcy court's approval of the stipulation. Moreover, here it is clear that GATX did not profit at the expense of the estate by receiving payments which would, in any event, have to have been made at the time of the stipulation. Accordingly, even under traditional preference analysis, Plaintiff's claim must fail.

3. Permitting Recovery of the Aircraft Payments Would Violate the Policies of 11 U.S.C. Sec. 1110.

Congress' purpose in enacting Section 1110 was to encourage the financing of, among other things, certain types of aircraft equipment.[10] To accomplish this purpose, Congress provided such financers with the absolute right to reclaim their

---

**8.** It is ironic to note that, with respect to the payment due April 26, the Trustee is trying to split that single payment down the middle by dividing it into preferential and non-preferential components. Airlift paid only $65,000.00 (roughly half of the April payment) prior to the filing of the petition. The other half was paid under the stipulation. The Trustee is now seeking to recover the first half while leaving the second undisturbed.

**9.** Section 547(b)(5) requires a comparison between what the creditor actually received and what other creditors in its class would receive in a Chapter 7 liquidation. It also requires a determination of what the creditor would receive in a Chapter 7 distribution.

**10.** Sec. 1110 was "designed to afford equipment financers greater certainty than existed under the other provisions of the bankruptcy act concerning such financers' ability to protect their collateral ... and to thereby enhance the ability

collateral after sixty days unless the Debtor, with Court approval, first cured all defaults and agreed to make future payments as they came due. The statute addressing defaults provides that the Debtor must cure "any default ... that occurred before [the petition was filed]." 11 U.S.C. Sec. 1110(a)(2)(A). No exception is carved out for defaults arising from payments due during the ninety days immediately preceding the filing of a petition. Congress referred to "*any* default" (emphasis added) and there is no reason to believe it did not mean what it said.

The effect of Section 1110 in encouraging financing for the air carrier industry is clear; by providing the creditor with either (i) prompt and sure repossession of its collateral, or (ii) satisfaction of all past due amounts and a promise to make future payments, the creditor's risk of loss is significantly reduced.

Allowing a Trustee or Debtor-in-Possession to recover pre-petition payments as preferences after curing its defaults pursuant to Sec. 1110 would have exactly the opposite effect. Under Plaintiff's proposed interpretation, the Debtor, anticipating his impending bankruptcy filing, could make all payments to the financer of the aircraft that were due, creating no pre-petition defaults that would have to be cured under a Sec. 1110 stipulation. After entering into such a stipulation and securing possession of the aircraft, the Debtor or Trustee could simply reclaim the payments made during the ninety-day pre-petition preference period. This result would obviously nullify the creditor's guarantee that previous obliga-

tions be met for the Debtor to retain possession of the aircraft. And such a result would ultimately cause creditors to raise the cost of aircraft financing to compensate for that risk.

■ This Court will not permit the Congressional purpose to be so easily circumvented. When, as here, a Debtor complies with the mandates of Sec. 1110, its Trustee is thereafter precluded from attempting to recover pre-petition payments as preferential under 11 U.S.C. Sec. 547.[11] Defendant's Motion for Summary Judgment is therefore granted.[12]

Defendants are directed to submit to this Court within ten (10) days from the date of this order a Final Judgment in accordance with this Memorandum Opinion and Order.

---

of airlines ... to attract significant amounts of capital at lower interest rates than would be otherwise available." 5 L. King, *Collier on Bankruptcy* sec. 1110.01 (15th ed. 1979).

The legislative history of the Act makes frequent reference to this purpose. *See, e.g.,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 239 (1977).

11. The case of *In re Vermont, Inc.,* 41 B.R. 486 (Bankr.D.Vt.1984), cited by Plaintiff in its Supplemental Memorandum of Law in Opposition to Motion for Summary Judgment, does not militate against this result. The case does not stand for Plaintiff's position that Sec. 1110 does not abrogate the force of Sec. 547, because the case is distinguishable on three important basis.

First, Air Vermont held an unperfected security interest; here, GATX has a perfected security interest in the aircraft. Second, *Air Vermont* deals with Section 544(b) not Section 547. Third, and perhaps most importantly, in *Air Vermont,* there was no court sanctioned stipulation as there is here.

12. Having concluded that summary judgment in favor of Defendant is proper, Plaintiff's Motions for Partial Summary Judgment and for Reference to the Bankruptcy Court are denied. Defendant's Motion to Stay Further Briefing and Consideration of Plaintiff's Motions until after this Court has decided its Motion for Summary Judgment is declared moot.