**In re Marlene M. FINN, Debtor.**

**Daniel F. GOSCH, Trustee, Plaintiff,**

**v.**

**Donald M. BURNS, Defendant.**

**Bankruptcy Nos. 87–00635–R, 87–0490–R.**

United States Bankruptcy Court, E.D. Michigan.

May 27, 1988.

As Amended June 30, 1988.

Daniel Gosch, Detroit, Mich., pro se.

Walter Czeizler, Livonia, Mich., for defendant.

## AMENDED MEMORANDUM OPINION

STEVEN W. RHODES, Bankruptcy Judge.

The trustee brought this preference action pursuant to 11 U.S.C. §§ 547 and 550. This matter is now before the Court on cross-motions for summary judgment.

### I. *Facts*

The alleged preferential payments arose out of an unsecured revolving loan agreement between the debtor, Marlene Finn, and the Taylor Community Credit Union. The loan was guaranteed by Finn's brother, Donald M. Burns, from whom the trustee seeks recovery in these proceedings. The parties have stipulated to the following facts:

1. Within one year before filing bankruptcy,[1] Finn made twelve monthly installment payments to the Taylor Community Credit Union.

2. The payments total $1300.

3. The payments were made on account of an antecedent debt owed by Finn to the Taylor Community Credit Union.

4. The payments were made while Finn was insolvent.

5. Burns is an insider as defined in section 101(30) of the Bankruptcy Code.

6. Burns was a creditor of Finn at the time the payments were made.[2]

7. The payments were made by Finn for the benefit of Burns.

8. Subparagraphs (4) and (7) of 11 U.S.C. § 547(c) are not applicable.

### II. *The Issues*

11 U.S.C. § 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; *and*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Pursuant to the parties' stipulation, it is clear that subparagraphs (1) through (4) of section 547(b) have been met. Finn's payments were all made for the benefit of a creditor, on a pre-existing debt, while Finn was insolvent, and within one year of the bankruptcy filing.

The issues to be resolved are:

---

1. Because Burns is an insider, the preference period is enlarged from 90 days to one year under 11 U.S.C. § 547(b)(4)(B).

2. It is clear from the Code that a guarantor is a "creditor" by virtue of the right to reimbursement from the debtor for any payments that the guarantor must make; here, the parties do not contend otherwise. 11 U.S.C. § 101(9). *See* H.R.Rep. No. 45–595 95th Cong., 1st Sess. 309–10, U.S.Code Cong. & Admin.News 1978, p. 5787 (1977); and 4 *Collier on Bankruptcy*, ¶ 547.04, p. 547–30 (15th ed. 1987).

1. Did the payments entitle Burns to receive more than he would have received if the case were a case under Chapter 7, the payments had not been made, and he had received payment of his claim to the extent provided by the provisions of Title 11?

2. Are the payments excepted from avoidance by section 547(c)(2)?

III. *Did the payments entitle Burns to receive more than he would have received if the case were a case under Chapter 7, the payments had not been made, and he had received payment of his claim to the extent provided by the provisions of Title 11?*

The trustee's affidavit establishes that but for the argument that Burns asserts, Burns did receive more as a result of Finn's payments to the credit union than he would have received in a Chapter 7 liquidation if Finn had not made the payments.

The argument asserted by Burns arises from Finn's reaffirmation of her debt to the Taylor Credit Union, pursuant to 11 U.S.C. § 524(c). Specifically, Burns argues that when the debtor and the creditor have entered into a reaffirmation agreement, the trustee may not avoid the pre-petition transfers because neither the creditor nor the guarantor received more than they would have received had the transfers not been made.

Citing *In re Derritt*, 20 B.R. 476, 480 (Bankr.N.D.Ga.1982), Burns argues that a creditor of a reaffirmed debt is not part of the general class of creditors holding unsecured claims, because, "... the reaffirmation agreement places the defendant creditor on a different footing than claims of other creditors, and makes it meaningless to consider distribution to the defendant-creditor."

Burns also cites *Seidle v. Gatx Leasing Corp.*, 45 B.R. 327, 332 (S.D.Fla.1984), which held that the creditor occupied a special position "... by virtue of the 'new life' conferred on the subject debt by the bankruptcy court's approval of the stipulation." Due to this special position, Burns argues that all the payments would have been made pursuant to the reaffirmation agreement anyway, and therefore he did not profit at the expense of the estate.

■ This Court rejects Burns's argument and the reasoning of *In re Derritt* and *Seidle v. Gatx Leasing Corp.* for several reasons. First, section 547(b)(5)(C) requires the court to determine the payment that the creditor would have received if the transfer had not been made "to the extent provided by the provisions of this title [Title 11]." Plainly enough, this language is intended to focus the Court's attention on the distribution that the creditor would have received (assuming the transfer had not been made) as a result of the due administration of the debtor's estate pursuant to the Bankruptcy Code, according to the priorities of distribution set forth in sections 507 and 726. When a debtor enters into a reaffirmation agreement and thereafter makes payments to the creditor, those payments are made pursuant to that reaffirmation agreement and not pursuant to "the provisions of this title [Title 11]." It is contrary to the first purpose of bankruptcy—to give the debtor a fresh start—to conclude that post-petition payments made by the debtor are made pursuant to Title 11. Thus, the hypothetical distribution to the creditor pursuant to the hypothetical liquidation set forth in section 547(b)(5) does not include the payments that the debtor has agreed to make pursuant to a reaffirmation agreement.

■ Second, the analysis required by section 547(b)(5) must be undertaken as of the moment of bankruptcy, and not some later, unspecified date. As noted in 4 *Collier on Bankruptcy*, ¶ 547.08, p. 547–37 (15th ed. 1987):

Section 547(b)(5) codifies the Supreme Court's holding in *Palmer Clay Products Co. v. Brown* [297 U.S. 227, 229, 56 S.Ct. 450, 450–51, 80 L.Ed. 655 (1936)]: whether a particular transfer is preferential should be determined "not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the

payment as determined when bankruptcy results. (Footnotes omitted.)

Third, there is no explicit language in section 547 that would serve to undermine a preference claim relating to pre-petition payments on a debt that the debtor chooses to reaffirm post-petition. If Congress intended to create such an exception to preference liability, it certainly could have done so explicitly. *Cf.* 11 U.S.C. § 547(c).

Fourth, as a practical matter, allowing the debtor to undermine an otherwise valid preference claim simply by the post-petition act of reaffirming a pre-petition debt would create real opportunities for substantial mischief, especially in circumstances involving insiders. It takes no great effort to speculate about the deals that might be attempted between the debtor and the creditor in an effort to avoid the preference action; for example, the debtor might agree to give the creditor a reaffirmation agreement, to show the court in an effort to avoid preference liability, in exchange for the creditor's promise to the debtor not to enforce it. The Court should be very hesitant to construe the Bankruptcy Code in a way that allows such conduct. *Cf. Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 432 (6th Cir.1982).

Fifth, Burns's position takes no account of the scenario in which the debtor rescinds the reaffirmation agreement, pursuant to 11 U.S.C. § 524(c)(2) and (4).

Accordingly, the Court concludes that the reaffirmation is legally irrelevant, that subparagraph (5) of section 547(b) has been met in these circumstances, and that the trustee has established all the elements necessary to avoid these transfers pursuant to section 547(b).

IV. *Are the transfers excepted from avoidance by section 547(c)(2)?*

■ 11 U.S.C. § 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

The trustee argues that the ordinary course of business exception does not apply to long term installment loan transactions, citing *Barash v. Public Finance Corp.,* 658 F.2d 504 (7th Cir.1981). *Barash* was a pre-Code case in which regular installment payments were made to a creditor within 90 days of an order for relief. In discussing the application of section 547(c)(2), the court stated:

In short, the § 547(c)(2) exception is aimed at transactions which, although they are technically credit transactions, are not intended to remain unpaid for a long time. In this sense, the "normal payments" exception is a variant of the "contemporaneous exchange" exception of § 547(c)(1).

. . . .

Although the "normal payments" exception in § 547(c)(2) protects consumer transactions as well as trade credit, the installment debts involved here do not fall within the statutory design. The cases in this appeal all involve long-term credit, in contrast to the situations where full payment is expected shortly after the obligation was incurred, and in fact payment is made within 45 days. If all regular consumer installment payments are to escape the trustee's avoidance powers, Congress, rather than the courts, should provide the relief.

658 F.2d at 511.

The trustee argues that although the 45 day limit no longer applies,[3] the purpose as expressed in *Barash* remains the same.

The court in *In re Bourgeois,* 58 B.R. 657 (Bankr.W.D.La.1986), expressed the same view. In *Bourgeois,* the trustee sought to avoid certain payments which

---

3. Congress eliminated the forty-five day requirement by amendment in 1984. *See* Bankruptcy Amendment and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 462, 98 Stat. 378.

had been made by the debtor to various creditors pursuant to long-term loans. In discussing the intent of Congress in enacting the 1984 amendments, the court reasoned:

> As originally enacted, § 547(c)(2) was intended to compliment § 547(c)(1) which provided that payments which constituted a "contemporaneous" exchange for goods or services were not preferential. Payments which were made within 45 days were considered to be substantially contemporaneous, and thus unlike antecedent debt. In other words, payment for goods and services when delivered or rendered, or paying for them within 45 days thereafter did not contravene the policies of § 547.
>
> The question thus becomes whether, in amending § 547(c)(2) to eliminate the 45-day limit, Congress intended to fundamentally change the scope of the ordinary course exception. *This court is convinced that the better view is that the amendment was intended only to eliminate an artificial time limit and no more.* The 45-day limit was eliminated so that provisions of the code will comport with normal business policies. From its inception, § 547(c)(2) was intended to exempt normal trade credit transactions.

*Id.* at 659. [Citations omitted and emphasis added.]

The trustee also argues that incurring this long term debt was not in the ordinary course of Finn's financial affairs. " 'Ordinary course' refers to the debtor's normal business operation of selling goods or providing services, not borrowing money." *Id.* at 660.

Burns argues that Finn's installment payments to the credit union do satisfy the three part test set forth in § 547(c)(2).

In support of Burns's position, Norton, 2 *Bankruptcy Law and Practice*, 32.14 (1981 & Supp.1987), states:

The amendment of this section clearly establishes that the underlying policy is to protect ordinary payments, rather than to provide limited protection for short term credit arrangements. As a result, it is now clear that *ordinary payments on installment debt*, credit cards, utilities and other common transactions will be protected if the terms and character of the payment are unexceptional and within the range of transactions commonly undertaken by the parties involved.

The Court concludes that Burns's argument must be rejected because it confuses the distinct requirements of subsections (A) and (B) of § 547(c)(2). Subsection (A) requires that the *debt* was incurred in the parties' ordinary course of business or financial affairs;[4] subsection (B) requires that the *payments* were made in the parties' ordinary course of business or financial affairs. Burns's showing that Finn made these monthly installment payments in the ordinary course of her financial affairs is certainly sufficient under subsection (B), but it is irrelevant under subsection (A). Neither Finn in particular, nor consumer debtors in general, incur long term installment debt in the ordinary course of their financial affairs, as required by subsection (A). In this regard, it must be noted that it is not sufficient to show that granting such long term debt is in the ordinary course of the credit union's business; subsection (A) requires that the debt was incurred in the ordinary course of the affairs of both the debtor *and* the transferee.

Accordingly, the Court concludes that this long term installment debt was not incurred in the ordinary course of Finn's financial affairs, and that therefore the exception of section 547(c)(2) does not apply.

## V. *Conclusion*

For the reasons stated herein, the Court concludes that the trustee's motion for

4. "The phrase 'normal course of financial affairs' was included in the statute to ensure that consumer transactions would be covered by the preference provisions." *Barash*, 658 F.2d at 509. "For the case of a consumer, the paragraph uses the phrase 'financial affairs' to include such non-business activities as payment of monthly utility bills." Senate Report, Legislative History, Bankruptcy Reform Act of 1978, 5 U.S.Code Cong. & Admin.News 1978, pp. 5787, 5874.

summary judgment must be granted, that the defendant's motion for summary judgment must be denied, and that a judgment must be entered in favor of the trustee in the amount of $1,300, pursuant to 11 U.S.C. § 547(b).

An appropriate judgment is entered herewith.