HANCOCK, District Judge:
This case involves an appeal by the Co-Trustees, William R. Roemelmeyer and Jeanette Tavormina (hereinafter referred to as Co-Trustees), of the bankrupt debtor, Lackow Brothers, Inc. (hereinafter referred to as Debtor), from a judgment entered by *1530 the bankruptcy court and affirmed by the district court in favor of Walter E. Heller & Company Southeast, Inc. (hereinafter referred to as Creditor). Co-Trustees brought an adversary proceeding in bankruptcy court to avoid a transfer of property made by Debtor to Creditor on the ground that the payments were preferential transfers voidable under 11 U.S.C. § 547(b). We affirm the lower court’s determination that the payments were not preferential transfers pursuant to 11 U.S.C. § 547(b) and (c)(5).
Debtor was a manufacturer of moderately priced jewelry with inventory consisting primarily of gold jewelry. In September of 1980 Debtor and Creditor entered into an Inventory Loan Security Agreement and Accounts Financing Security Agreement under which Creditor received a promissory note and agreed to advance Debtor monies in exchange for a security interest in Debt- or’s inventory, goods, merchandise, accounts receivable, general intangibles and contract rights. On April 1, 1981, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. After an unsuccessful attempt at reorganization, the case was converted to a Chapter 7 proceeding on August 4, 1981, at which time appellants were appointed Co-Trustees to liquidate Debtor’s estate. On February 19, 1982, Co-Trustees filed a complaint alleging that Debtor had made preferential payments in the amount of $365,000 to Creditor within ninety days of the filing of the Chapter 11 petition. In order for the transfer to be avoided under section 547(b), the Co-Trustees had to prove that Creditor received more from these payments than it otherwise would have received in a Chapter 7 liquidation.[1] The Creditor denied the allegations and affirmatively argued that the payments were specifically excluded from the Trustee’s avoidance power under section 547(c)(5).[2] In order to fall within this exception to preferential transfers, a creditor must prove that its financial position did not improve within the ninety days pri- or to bankruptcy.
In bankruptcy court, the Co-Trustees maintained that on the date of the filing of the petition Creditor was undersecured; therefore, according to Barash v. Public Finance Corp., 658 F.2d 504 (7th Cir.1981), the payments made within ninety days of bankruptcy applied first to the unsecured component of Creditor’s debt. The Co-Trustees premised this argument on the bankruptcy court’s previous determination that the value of the pledged collateral on April 1, 1981 was $922,000.[3] Undisputed *1531 evidence showed that on April 1, 1981, Debtor owed Creditor approximately 1.6 million dollars. If the Co-Trustees could get the bankruptcy court to readopt its April 1, 1981 determination of value then Creditor would have a secured claim in the amount of $922,000 and an unsecured claim in the amount of approximately $678,000. Under Barash, supra, the $365,000 payment would apply toward the $678,000 unsecured claim and the bankruptcy court would have to avoid the preferential transfer.
Creditor relied on uncontradicted evidence of the “computer value” of the collateral on both the ninetieth day prior to bankruptcy (January 1, 1981) and on the date of bankruptcy (April 1, 1981), both to rebut the allegation of a preferential transfer under section 547(b) and affirmatively to prove the section 547(c)(5) exception. The computer printouts were routine accounting reports sent from Debtor to Creditor, upon which Creditor relied to advance additional funds. These records established that: (1) on January 1, 1981, the pledged collateral was worth approximately 4.7 million dollars while Debtor’s obligation was approximately 1.9 million dollars; and (2) on April 1, 1981, the pledged collateral was worth approximately 3.9 million dollars and Debtor’s obligation was approximately 1.6 million dollars. These values clearly establish that Creditor was fully secured. Hence, Creditor argued that it received no more than it would have received under Chapter 7 liquidation. Furthermore, since Creditor was fully secured on January 1 and April 1, its position did not improve within the ninety days prior to bankruptcy. Thus, the payments fell within the section 547(c)(5) preferential transfer exception.
Maintaining that the valuation of collateral must be determined on a case-by-case basis, the bankruptcy court refused to adopt its earlier value on April 1, 1981 and held that the proper valuation standard was the “ongoing concern” value of the collateral, as reflected in the routine accounting reports. The bankruptcy court concluded that Creditor did not improve its position by accepting Debtor’s payments and therefore the payment was specifically excepted from preference under 11 U.S.C. § 547(c)(5).
On appeal to the district court, the Co-Trustees urged that the bankruptcy court erred in applying the “ongoing concern” value and that the correct standard to be applied was the “liquidation value.” In asserting this position, Co-Trustees relied on Creditor’s testimony that it had received 1.2 million dollars from the sale of Debtor’s inventory and collection of the accounts receivable. Co-Trustees urged the adoption of this valuation standard since under it Creditor would be deemed undersecured and the payments would be preferential transfers pursuant to section 547(b). The district court, however, held that the liquidated value of the collateral, which was sold over six months after filing of bankruptcy would not accurately determine whether the Creditor’s loan was secured during the ninety-day period prior to the filing of the petition; therefore, the “ongoing concern” was the only standard of valuation that could be adopted.
On this appeal the Co-Trustees urge us to find that the only proper standard of valuation in this case is the liquidation value and that payments should be avoided pursuant to section 547(b). The sole issue we must resolve is whether the district court was clearly erroneous in applying the “ongoing concern” value in determining Creditor had not received preferential payments under section 547(b) and in finding that Creditor’s position had not improved under section 547(c)(5).
In this case the method used to value the collateral is crucial to determining whether the payments to Creditor in the ninety days prior to bankruptcy are subject to preference attack. Since Creditor had a “floating lien” on Debtor’s inventory and accounts receivable, the section 547(c)(5) exception to preferential transfers applies and our inquiry should be whether Creditor’s position “improved” relative to what it was preceding bankruptcy. To determine “improvement in position,” Creditor’s “position” is *1532 relevant on two different dates: January 1, 1981, ninety days before the filing of the Chapter 11 petition, and April 1, 1981, the date of the filing of the petition. Thus, the value of the accounts receivable and inventory must be calculated on these two dates. If the “ongoing concern” value is used, no “improvement in position” exists; however, if the liquidation value is used, improvement is apparent and the transfer should be avoided.
Section 506(a) of the Bankruptcy Code provides only general principles we should follow in determining what standard of valuation is proper in calculating the value of a creditor’s secured claim: “... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor’s interest.” 11 U.S.C. § 506(a). The legislative comments to this section do not give any further guidance except to reiterate that we are to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case. H.R.Rep. No. 545, 95th Cong., 1st Sess. 356 (1977) reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6312.
In an effort to provide some guidance to the courts in determining what value to use in calculating "improvement in position,” Collier on Bankruptcy, a leading treatise in bankruptcy law, suggests that the liquidation value be used in a liquidation case under Chapter 7 and that the going concern value be used in a Chapter 9, 11, or 13 case. This advice is not set in cement, as Collier recognizes that other standards of value may be appropriate in certain cases. 4 Collier on Bankruptcy 11 547.41 at 129 (15th ed. 1984). Co-Trustees argue that Collier supports their position that the liquidation value should have been adopted in the bankruptcy and district courts as the value of the collateral on both January 1 and April 1, and therefore, that Creditor’s position improved. We are convinced, however, that this case is one in which a standard of value other than the liquidation value is not only more appropriate, but is even mandatory.
The only evidence before this court showing what the monetary value of the accounts receivable and inventory was on January 1, 1981, is the value as shown on the computerized accounting reports. Despite Co-Trustees’ argument on this appeal that the “computer value” is not credible, we have before us absolutely no evidence indicating that the accounting records were inaccurate or untrustworthy. The Co-Trustees did not challenge the accuracy of those records in the bankruptcy court. Moreover, the bankruptcy court specifically determined that these ongoing concern values were derived from Debtor’s own routine accounting reports to Creditor in the regular course of business and that the values were properly admissible. The only evidence in the record of value for the ninetieth day prior to the filing of bankruptcy is the ongoing concern value; therefore, this is the only standard of valuation that can be applied to determine if Creditor’s position improved between January 1 and April 1, 1981. The fact that Creditor sold Debt- or’s collateral for 1.2 million dollars six months after the Chapter 11 petition was filed does not shed much light on what the collateral was worth nine months earlier on the ninetieth day before filing of bankruptcy, especially taking into consideration the nature and type of the collateral. We agree with the district court’s holding that the only standard of valuation that could be applied in this case to any degree of accuracy would be the “ongoing concern” standard. See Matter of Lackow Bros., Inc., 19 B.R. 601 (S.D.Fla.1982).
Co-Trustees also rely on In re Adams, 2 B.R. 313 (M.D.Fla.1980) and Matter of Cooper, 7 B.R. 537 (N.D.Ga.1980) to support their argument that the liquidation value is the only proper value to use in this case. Neither of these cases concern the value of inventory or accounts receivable, nor do they involve property values at a point in time prior to bankruptcy. We hold that these cases simply do not apply to this appeal.
*1533 We conclude that the holdings of the bankruptcy court and the district court were not clearly erroneous in using the ongoing concern value to determine that pursuant to section 547(c)(5) Creditor had not improved his position between the ninetieth day prior to bankruptcy and the actual date the petition was filed. We therefore AFFIRM.

. Pursuant to 11 U.S.C. § 547(b), the trustee must avoid a transfer of property if the following five elements are proven: (1) a transfer of property is made to or for the benefit of a creditor, (2) for or on account of a pre-existing debt, (3) made while the debtor was insolvent, (4) made on or within 90 days before the date of the filing of the petition; or made between 90 days and one year before the date of the filing of the petition if, at the time of the transfer, the creditor was an insider and had reasonable cause to believe the debtor was insolvent, and (5) that enables the creditor to receive more than he would receive if the estate were liquidated under Chapter 7.

. Section 547(c)(5) provides:
(c) The trustee may not avoid under this section a transfer—
... (5) of a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interest for such debt on the later of—
(A) (i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or
(ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; and
(B) the date on which new value was first given under the security agreement creating such security interest____

. This previous determination of the value of the collateral by the bankruptcy court resulted from an action brought by the Creditor against the Co-Trustees to obtain relief under 11 U.S.C. § 362. This determination was made in October of 1981, six months after the filing of the Chapter 11 petition and subsequent to the conversion to Chapter 7 liquidation.